UNITED STATES of America,
Plaintiff–Appellee,

v.

Dorothy WILLIAMS, Melvin Smith, Eugene Moore, Willie Henry Jenkins, Ralph Lipsey, Jr., Defendants–Appellants.

No. 90–8181.

United States Court of Appeals,
Eleventh Circuit.

July 30, 1991.

William O. Cox, Savannah, Ga., for Williams.

George M. Hubbard, Savannah, Ga., for Smith.

William H. Godlove, Rincon, Ga., for Moore.

Julie Dampier Majer, Brennan, Harris & Rominger, Savannah, Ga., for Jenkins.

Sage Brown, Savannah, Ga., for Lipsey.

Joseph D. Newman, Asst. U.S. Atty., Savannah, Ga., for U.S.

Before KRAVITCH and COX, Circuit Judges, and RONEY, Senior Circuit Judge.

RONEY, Senior Circuit Judge:

The appellants, Dorothy Williams, Eugene Moore, Willie Henry Jenkins, Melvin Smith, and Ralph Lipsey, were among thirty individuals named in a 59–count indictment alleging violations of various narcotics and money laundering statutes. *See United States v. Manor*, 936 F.2d 1238 (11th Cir.1991), and *United States v. Thompson*, 936 F.2d 1249 (11th Cir.1991). We will discuss two issues raised in their appeals. *First*, all five appellants raise an objection to the prosecutor's allegedly discriminatory use of peremptory challenges. We affirm the decision of the district court which found that the reasons articulated by the prosecution for striking three black members of the venire were sufficient to rebut any presumption of discrimination. *Second*, appellant Smith challenges the admission of evidence which he claims was illegally seized by police officers. We affirm on the ground that the evidence seized during the vehicle search was obtained pursuant to an authorized inventory search. As to all other issues raised on appeal, we affirm without opinion, pursuant to our Eleventh Circuit Rule 36–1.[1]

---

1. Defendant Lipsey maintains that his trial counsel provided ineffective assistance in violation of his Sixth Amendment rights. *See Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). Although the trial court reached the merits of this claim and both parties submit that there are no factual disputes warranting delay, we decline to review this issue on direct appeal. *United States v. Lopez*, 728 F.2d 1359, 1363 (11th Cir.), *cert. denied*, 469 U.S. 828, 105 S.Ct. 112, 83 L.Ed.2d 56 (1984).

The Government in this case maintained that the defendants were part of an elaborate conspiracy to distribute cocaine in Savannah, Georgia. One co-defendant, Byron Thompson, was allegedly at the top of this distribution network. Thompson would front the drugs to his distributors who would then sell the drugs either on the streets or to other smaller distributors. Thompson would be paid for the previous shipment when he or his representatives made the next delivery. To facilitate the numerous transactions the organization made on a daily basis, Thompson and his associates made extensive use of both mobile telephones and pagers. As part of the investigation, the Government relied heavily on the use of both pen registers and Title III wiretaps.[2] Through these devices, agents were able to connect the various members of the conspiracy, as well as gather valuable information concerning the activities of the organization.

The defendants filled roles at virtually every level in the conspiracy. Defendant Williams was indicted for conspiracy to distribute cocaine, as well as for two counts of money laundering. She allegedly allowed Byron Thompson to place various automobiles and a piece of real property in her name to help hide the proceeds of his illegal activities. Defendant Lipsey was not named in the conspiracy to distribute count but was named in two money laundering counts for his role in obtaining vehicles for Thompson and placing them in the names of nominal holders. Defendants Moore and Jenkins allegedly played central roles in supplying Thompson's distributors with the drugs they ordered, while defendant Smith served a somewhat lesser role as a driver for the Thompson organization.

## A. *Batson Claim*

In *Batson v. Kentucky,* 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986), the Supreme Court held that the Equal Protection Clause of the Fourteenth Amendment pro-

hibits the Government from using its peremptory challenges to eliminate venire members on the basis of race. Although the Fourteenth Amendment applies only to the states, this holding is equally valid in cases involving the United States based on the implicit equal protection guarantees of the Fifth Amendment. *See United States v. Horsley,* 864 F.2d 1543, 1544 & n. 2 (11th Cir.1989) (*citing Johnson v. Robison,* 415 U.S. 361, 364 n. 4, 94 S.Ct. 1160, 1164 n. 4, 39 L.Ed.2d 389 (1974)).

■ In order to establish a presumption of a violation, the defendant must first present a prima facie case of discrimination. To meet this burden the defendant must prove that the prosecutor has used peremptory challenges to strike members of a minority race, and that the circumstances surrounding such use raise an inference of discrimination. *Batson,* 476 U.S. at 96, 106 S.Ct. at 1722. Although of no significance here, since all the defendants are black, we note that the Supreme Court has recently held that a defendant need not be a member of a cognizable racial group in order to assert the rights of minority members excluded by the prosecution. *See Powers v. Ohio,* —— U.S. ——, 111 S.Ct. 1364, 113 L.Ed.2d 411 (1991).

■ Once the defendant has made out a prima facie case, the burden shifts to the Government to demonstrate a racially-neutral basis for its actions. Such justifications need not rise to the level of for cause challenges, but they must state an articulable basis for the decision which bears some relation to the case to be tried. *Id.* 476 at 97–98, 106 S.Ct. at 1723–24. Ultimately, the finding as to why a juror is excused is an issue of fact. Although the issue is whether the prosecutor has intentionally discriminated in jury selection on the basis of race, a prosecutor may not defeat the prima facie case by simply denying that he had a discriminatory motive or asserting his good faith in making his selections. *Id.*

---

**2.** Defendant Dorothy Williams has adopted the arguments in the separate appeal of co-defendant Thompson challenging the admission of pen register evidence based on the Government's failure to comply with the statute regulating the use of pen registers. 18 U.S.C. § 3121. We have concluded in *United States v. Thompson,* 936 F.2d 1249 (11th Cir.1991), that the district court was not required to exclude this evidence.

at 98, 106 S.Ct. at 1723. Something more than that is necessary to rebut the presumption created by the prima facie case.

■ The selection of a jury is by nature a subjective process which relies heavily on the instincts of the attorneys, the atmosphere in the courtroom, and the reactions of the potential jurors to questioning. The trial judge is necessarily in the best position to weigh these factors and determine whether the prosecution has indeed exercised the privilege of selecting jurors in a prejudicial manner. The district court's determination on this issue, therefore, will not be disturbed unless it is clearly erroneous or appears to have been guided by improper principles of law. *Id.* at 98 n. 21, 106 S.Ct. at 1724 n. 21.

In the present case, the prosecutor used three of his six peremptory challenges to strike the only three black members of the jury pool. As a result, the nine black defendants being tried were convicted by members of an all white jury. When the defendant asserted a *Batson* violation, the district court required the Government to articulate a racially neutral basis for its strikes. After listening to the Government's justifications, the court overruled the objections.

In a short order issued after the verdicts were returned, the district court reiterated its earlier position that "the government had offered a racially neutral explanation for the exercise of each peremptory strike sufficient to satisfy" the standard set forth in *Fludd v. Dykes*, 863 F.2d 822, 829 (11th Cir.1989). We review the district court's conclusion that the reasons advanced by the Government successfully countered any arguments of discriminatory intent.

■ As to juror Denia Watts, the prosecutor asked that she be excused after she stated that trial counsel for one of the defendants had represented her in two previous divorce actions. As the district court found, this type of association with counsel for the defense is more than sufficient to meet the requirement established in *Batson.*

Defendant Jenkins suggests that this reason advanced by the prosecution is merely pretextual. He argues that several individuals, who presumably are white, also had contact with either one of the defense attorneys or a government witness but were not stricken. The district court is not required to find evidence of discrimination in such generalized allegations of equivalence between white members who were allowed to remain on the panel and black members who were stricken. We agree with Judge Hatchett's concurring opinion in *United States v. Alston*, 895 F.2d 1362, 1373 (11th Cir.1990) (Hatchett, J., concurring) (*citing United States v. Thompson*, 827 F.2d 1254, 1260 (9th Cir.1987) and *United States v. Wilson*, 853 F.2d 606, 610 (8th Cir.1988)), in which he concluded that evidence of this kind can be used to demonstrate that the reasons advanced by the prosecution are a pretext for underlying discrimination. In this case, like *Alston*, however, the defendants have failed to present a sufficiently detailed comparison between white and black venire members who allegedly have similar traits but who were treated differently by the prosecution to warrant a finding of pretext.

■ The prosecutor struck juror Olivia Smalls due to her advancing years and her apparent inability to follow the questions directed toward her during voir dire. The prosecutor indicated that he was concerned about Ms. Smalls' ability to focus on the evidence and express an independent viewpoint during deliberations. The trial judge had the opportunity to observe Ms. Smalls and similarly concluded that she did not appear particularly alert and may not have been in the best of health. The court determined that the prosecutor was justified in questioning her ability to withstand the rigors of a lengthy and complicated trial. Although the determination of the district court is generally afforded great deference in all *Batson* determinations, an appellate court should particularly follow the district court's judgment in this type of situation where the opportunity to view the prospective juror plays such an important role in the decision. *See Alston*, 895 F.2d at 1374 (Hatchett, J., concurring) (distinguishing

between "concrete" and "subjective" justifications for purposes of determining the appropriate level of deference to be accorded district court's decision).

■ The final juror, Aletha Singleton, presents the most troubling case. In his explanation to the court, the prosecutor stated that Ms. Singleton had been stricken because she resided in the same geographic area as a family the prosecutor had convicted on charges of conspiracy to distribute heroin five years earlier. When asked if she was familiar with these individuals Ms. Singleton responded, "I heard the Spauldings lived on 42nd. But as far as knowing them personally, no." The Government indicated that it was concerned about what it perceived as an "associational link." Although the district court expressed some reservations, it ultimately concluded that the prosecutor simply "did not want to take a chance," and it overruled the defendants' *Batson* objection.

*Batson* requires the prosecution to advance a neutral explanation related to the present case. This type of "associational" concern is particularly problematic and raises serious concerns about the potential for cloaking discriminatory motives in only marginally neutral justifications. We cannot conclude, however, that the district court was clearly erroneous in holding that the prosecution's use of a peremptory strike to challenge Ms. Singleton was not discriminatory. Unless peremptory strikes are to be eliminated entirely, *see Batson*, 476 U.S. at 102, 106 S.Ct. at 1725 (Marshall, J., concurring) (suggesting just that), it cannot be concluded that the facts in this case clearly demonstrate an improper use of the peremptory privilege. From her address, it appears that Ms. Singleton lived within one block of what was described as an enormous heroin conspiracy, a conspiracy similar in scope and size to the one involved in this trial. Apparently the Spaulding family was well known, as was the manner in which they made their living. The prosecutor legitimately may have concluded that Ms. Singleton might be affected by her proximity to a crime similar in nature. Peremptory strikes are intended to give validity to just this type of judgment, to conclusions which, while not sufficient to justify a for cause challenge, nonetheless raise the possibility of bias.

Several other circuit courts have upheld peremptory strikes based on this type of geographic relationship between the juror and the case to be tried. The court in *United States v. Ruiz*, 894 F.2d 501, 507 (2nd Cir.1990), concluded that it was not improper for the Government to strike a black prospective juror because her husband sold real estate in the neighborhood where the crimes were committed. The prosecutor indicated that the juror might improperly bring knowledge of persons or places involved in the trial to the deliberations. In *United States v. Tindle*, 860 F.2d 125, 129 (4th Cir.1988), *cert. denied*, 490 U.S. 1114, 109 S.Ct. 3176, 104 L.Ed.2d 1038 (1989), the court determined that the Government had offered a sufficient reason for striking a juror by noting that the defendant had made a large number of phone calls to co-conspirators in the juror's neighborhood. In *United States v. Davis*, 871 F.2d 71, 72 (8th Cir.1989), the fact that defendant had a reputation for violence and may have intimidated jurors from neighborhoods where his organization operated was found sufficient to support the prosecutor's exercise of peremptory strikes against several venire members who resided in these areas. *See also United States v. Briscoe*, 896 F.2d 1476, 1488 (7th Cir.) (knowledge of the area where heroin transactions occurred sufficient to strike jurors that lived in neighborhood), *cert. denied*, —— U.S. ——, 111 S.Ct. 173, 112 L.Ed.2d 137 (1990); *United States v. Mitchell*, 877 F.2d 294, 303 (4th Cir.1989) (in case against popular congressman's nephews, Government could exercise peremptories against individuals living in district represented by defendants' uncle).

Based on a review of the entire record, we conclude that the district court was not clearly erroneous when it decided that the prosecutor had not used its peremptory strikes to challenge members of the venire on the basis of race.

In its written order, the district court also stated: "Moreover, defense counsel failed to voice a timely objection. They delayed until the jury had been chosen and all other panel members dismissed, despite the fact that they had the opportunity to initiate a *Batson* challenge when the panel was still assembled." The jury had not been sworn when the *Batson* argument was made. Neither party has briefed this issue and the Government has not asserted on this appeal the untimeliness of the *Batson* objection. Therefore, we do not address this alternative ground for denying *Batson* relief.

### B. *Illegal Search*

■ Defendant Smith argues that the trial court should have suppressed four ounces of crack cocaine and a large sum of cash seized pursuant to what was described as an inventory search of a vehicle he was occupying.

Officer Richard Collier of the Savannah Police Department was in his patrol car when he observed a black male leaning through the window of a parked vehicle. As he stopped the car, the individual began to walk toward the officer and explained that he and his friend had run out of gas. The man asked Officer Collier if the officer could give him a ride home so he could get some money to refuel.

Officer Collier testified that although he could not articulate a specific reason, he was uneasy about this situation. He agreed to take the individual home but proceeded to ask him several questions on the way. The individual identified himself as Byron Thompson and gave the officer his address. After checking for outstanding warrants, of which there were none, the officer dropped Thompson off at his home. He remained suspicious, however, and decided to return to the vehicle to see if it had indeed been out of gas.

When he arrived, the car was parked in the same spot and defendant Smith was seated in the driver's seat. Officer Collier approached the car to ask Smith if he needed any further assistance. As it was raining, the officer asked Smith if he would

mind if they spoke in the patrol car. Smith consented and accompanied Collier to the car. The officer placed Smith in the back seat and called in the license plate number on the vehicle. At that time he discovered that the license number did not match the vehicle but was instead assigned to a different car.

Officer Collier testified that upon receiving this information he walked over to the car and began looking through the windows. In the back seat he apparently saw two women's purses with their contents spilled on the seat and floor. He opened the car door and after searching the handbags and the general area he discovered four ounces of crack and a sum of money. He then called for assistance and a more detailed search was conducted before the vehicle was impounded.

The district court concluded that the officer had the legal right to impound the vehicle at the time he learned of the improper license plate and thus the search was justified either as an onsite inventory search or under the inevitable discovery doctrine. The Supreme Court has indicated that inventory searches are only justifiable if performed pursuant to explicit and comprehensive procedures. Without such procedures, officers are left with no guidance in the performance of a duty which is meant not as an investigatory technique but as a means for safeguarding individuals' possessions and protecting the police from false claims. *Colorado v. Bertine,* 479 U.S. 367, 372, 107 S.Ct. 738, 741, 93 L.Ed.2d 739 (1987).

If a search is to be upheld under the inventory search doctrine, therefore, the police must first have the authority to impound the vehicle and must then follow the procedures outlined in the policy. While neither the prosecution nor the district court have made reference to the police regulations which state that infractions such as this can result in impoundment, the district court did indicate that the policy of the Savannah Police Department permitted impoundment under these circumstances. The defendant has not countered this assertion.

The district court concluded as a matter of fact that Officer Collier decided that he would have the car impounded immediately upon learning that it had an improper license. Such factual determinations on evidentiary issues will not be disturbed unless they are clearly erroneous. *United States v. Bulman,* 667 F.2d 1374–1379 (11th Cir.), *cert. denied,* 456 U.S. 1010, 102 S.Ct. 2305, 73 L.Ed.2d 1307 (1982). The defendant has made no effort to rebut this finding other than to cite Officer Collier's testimony that ordinarily such an infraction warrants only a ticket. Although this may *ordinarily* be the consequence of an improper tag, the officer's testimony demonstrates that in this instance he immediately concluded that he would have the car impounded for this violation. The defendant has not cited any pertinent authority suggesting that the officer did not have the legal right to impound the car, nor has he suggested that Officer Collier violated police regulations in any way. As a result, we conclude that the district court correctly denied defendant's motion to suppress on the ground that the evidence was properly seized pursuant to an authorized inventory search.

AFFIRMED.