[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

----------------------------------------

No. 07-13714

Non-Argument Calendar

----------------------------------------

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
Sept. 3, 2008
THOMAS K. KAHN
CLERK

D.C. Docket No. 06-00513-CT-T-24MSS

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

DEREK MCCALLA,

Defendant-Appellant.

----------------------------------------------------------------

Appeal from the United States District Court
for the Middle District of Florida

----------------------------------------------------------------

**(September 3, 2008)**

Before EDMONDSON, Chief Judge, CARNES and PRYOR, Circuit Judges.

PER CURIAM:

This Court sua sponte vacates its prior opinion in this case issued on 26 June 2008 and enters the following opinion in its place:

Defendant-Appellant Derek McCalla appeals the denial of his motion to suppress and his 262-month sentence for drug and firearm offenses.[1]  Reversible error has been shown; we vacate and remand for additional proceedings.

On appeal, McCalla argues that the district court erred in denying his motion to suppress the drugs and gun discovered during a search of his car and the statements he made after his arrest.  He contends that the initial traffic stop, his arrest, and the later search of his car were all illegal.  We review the denial of a motion to suppress under a mixed standard of review, examining the district court's factual determinations for clear error and its application of law to those facts de novo.  United States v. King, 509 F.3d 1338, 1341 (11th Cir. 2007).

McCalla's argument that the initial traffic stop violated the Fourth Amendment is without merit.  The undisputed evidence indicates that a police officer saw McCalla swerve out of his lane on two occasions and almost strike another car; thus the officer had probable cause to believe that McCalla committed a traffic violation, and it was reasonable for the officer to stop him.  Whren v. United States, 116 S.Ct. 1769, 1772 (1996) (the decision to stop a car is

---

[1]McCalla pled guilty to a felon-in-possession count and, after a bench trial, was convicted of the other drug and firearm counts.  He received 120-month sentences on three counts, to run concurrently to one another, and a 142-month sentence on the remaining count, to run consecutive to the other sentences.

reasonable where police have probable cause to believe that a traffic violation has occurred); see also Fla. Stat. § 316.089(1) ("A vehicle shall be driven as nearly as practicable entirely within a single lane and shall not be moved from such lane until the driver has first ascertained that such movement can be made with safety.").[2]

About the search of McCalla's car, we conclude -- as did the district court -- that it was justified as an inventory search. To uphold a warrantless search under the inventory search doctrine, the police first must have the authority to impound the vehicle and then must follow the procedures outlined in the policy. United States v. Williams, 936 F.2d 1243, 1248 (11th Cir. 1991).

When an officer first stopped McCalla, he asked him and his passenger for identification. McCalla's passenger, Shaka C. Acquil, initially gave a false name and birthdate. When the police officer could not verify the name Acquil provided, a back-up officer who had arrived obtained Acquil's correct name. A dispatcher communicated to the officers that Acquil had an outstanding warrant for failure to pay child support. Based on this information, the officers decided to detain

---

[2]McCalla's assertion that the officer's actual reasons for stopping him were pretextual is irrelevant to whether the traffic stop was constitutional. See Whren, 116 S.Ct. at 1174 (explaining that the constitutional reasonableness of traffic stops does not depend on the actual motivations of the officers involved).

Acquil; and in their attempt to do so, Acquil began shooting at them from inside the car, and the officers fired back. Acquil fled the scene before additional backup arrived. Once backup officers arrived, McCalla was arrested; and his car was searched because it had just been used to commit a felony. Pursuant to police department procedures, officers regularly impounded vehicles used to commit crimes and conducted inventory searches on them.

Here, officers lawfully searched McCalla's car because it had been used in the commission of a felony when Acquil shot at them from inside the car. The officers were operating according to their department's standard impound procedure. Contrary to McCalla's assertion on appeal, nothing in the record suggests that the officers searched the car in bad faith; he does not dispute that a crime took place in the officers' presence and that the car was subject to impoundment. See id. at 1248-49 (affirming the denial of defendant's suppression motion based on the inventory search doctrine where defendant "ha[d] not cited any pertinent authority suggesting that the officer did not have the legal right to impound the car"). Even if the officers were not authorized to conduct the search immediately after arrest, the evidence inevitably would have been discovered during the search of the car once it was impounded. See United States v. Rhind, 289 F.3d 690, 694 (11th Cir. 2002) (affirming the denial of a suppression motion

4

where the evidence would have been discovered in a routine inventory search of the defendant following his arrest). McCalla's argument that he was not involved in the shootout with Acquil does not bear on the lawfulness of the search because the car still was used in the commission of a felony and subject to impoundment by the police.[3]

We now address McCalla's challenge to his career offender status. He contends that his Florida state conviction for carrying a concealed weapon should not be classified categorically as a crime of violence for purposes of the career offender provision, U.S.S.G. § 4B1.1.

We recently determined that carrying a concealed weapon under Florida law is not a crime of violence for career offender purposes. United States v. Archer,

---

[3]McCalla also argues that the search was unlawful because, in a written report, an officer indicated that the search was incident to McCalla's arrest for driving with a suspended license when, in fact, his license was not suspended. We need not address this argument because the search was justified as an inventory search based on Acquil's acts. Still, we conclude that McCalla's arrest was lawful. When officers contacted dispatch about the parties' identifications, a dispatcher indicated that "it was suspended license times two." The officers interpreted this statement to mean that both McCalla's and Acquil's licenses were suspended. This mistake of fact about the status of McCalla's license under these circumstances does not make the officers' act in arresting him unreasonable. See United States v. Chanthasouxat, 342 F.3d 1271, 1275 (11th Cir. 2003) ("[a]n officer's mistake of fact may provide the objective basis for reasonable suspicion or probable cause under the Fourth Amendment because of the intensely fact-sensitive nature of" those determinations). McCalla also suggests that the arrest and search were unlawful because the officers were outside their legal jurisdiction when they stopped him. While the traffic stop occurred outside the jurisdiction of Temple Terrace, Florida, the officers still were authorized to arrest McCalla because they were in "fresh pursuit" of him for his violation of the traffic laws that occurred in their jurisdiction. Fla. Stat. § 901.25(1)-(2).

531 F.3d 1347, 1351-52 (11th Cir. 2008) (relying on United States v. Begay, 128 S.Ct. 1581 (2008)).[4] Thus, the district court erred in using this conviction to classify McCalla as a career offender. Without this conviction, McCalla has only one other conviction qualifying him for career offender status.[5] Therefore, we affirm the denial of the motion to suppress but vacate and remand for additional proceedings consistent with this opinion on the sentencing issue.

AFFIRMED IN PART, VACATED IN PART AND REMANDED.

---

[4]The Archer decision abrogated our prior decision in United States v. Gilbert, 138 F.3d 1371, 1372 (11th Cir. 1998), where we had concluded that carrying a concealed firearm under Florida law was a "crime of violence" under section 4B1.2.

[5]This conviction was for possession of marijuana with intent to sell.