[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 10-15221

_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
JAN 9, 2012
JOHN LEY
CLERK

D. C. Docket No. 5:10-cr-00024-MTT-CHW-1

UNITED STATES OF AMERICA,

                                                    Plaintiff-Appellee,

versus

MARSHALL H. FOSKEY,

                                                    Defendant-Appellant.

_____

Appeal from the United States District Court
for the Middle District of Georgia

_____

(January 9, 2012)

Before HULL, MARCUS and BLACK, Circuit Judges.

PER CURIAM:

On August 17, 2010, a jury convicted Marshall H. Foskey of possessing a firearm as a convicted felon in violation of 18 U.S.C. § 922(g)(1). On November 3, 2010, the district court sentenced Foskey to 240 months' imprisonment. Foskey appeals the district court's denial of his motion to suppress evidence seized from his vehicle. Foskey contends that he was stopped without reasonable suspicion, arrested without probable cause, and that the inventory search of his van was invalid. For the reasons stated below, we affirm.

I.

On Sunday, July 19, 2009, around 8:30 a.m., employees of the Fresh Air Bar-B-Que (Fresh Air) in Macon, Georgia, contacted law enforcement. The employees reported seeing a blue conversion van occupied by an older white man parked suspiciously in their parking lot. Because the vehicle was parked so close to a bush line, the employees speculated that either the van was stolen, or its driver was considering robbing their business. Officer Eric Dorough of the Macon Police Department responded to the initial call. Fresh Air is located on the southern end of a shopping center just west of I-75. When he arrived at the scene, Officer Dorough did not see a blue van in the parking lot. He entered Fresh Air, and learned the van had been moved shortly after the employees called the police.

2

The employees reported the direction of travel and reiterated their vague descriptions of a blue conversion van and an older white male driver.

Officer Dorough returned to his car, drove behind the shopping center, encountered no one, and proceeded to the neighboring parking lot. There, Officer Dorough located the van. The van was again parked in a suspicious manner. Although in a legal parking space, the driver had backed the van so far into the bushes that it was impossible to obtain the van's license plate number. Officer Dorough exited his patrol car, obtained the van's vehicle identification number (VIN) from the dashboard, and examined the van. Multiple van windows were open, including the driver's side window which was half-way down. A search using the VIN indicated the vehicle was owned by a Jesse Foskey.

Not seeing anyone inside the van, Office Dorough returned to his patrol car and drove towards Fresh Air. A Fresh Air employee flagged him down, and frantically told him the older white man from the blue van was walking behind the shopping center. Officer Dorough again drove behind the shopping center and this time encountered Foskey, who fit the description of the older white male. Officer Dorough drove up next to Foskey, and, suspecting him to be the driver of the blue van, proceeded to ask him questions. After initially cooperating, Foskey became evasive when asked about the blue van. Officer Dorough then asked him

3

for identification. Foskey backed away and sprinted into the trees. Officer Dorough called for back-up, and pursued Foskey on foot, ordering him to stop. Foskey dropped a pair of glasses and a hat, but continued his flight. Officer Dorough lost sight of him after a substantial chase. Responding officers apprehended Foskey in the woods behind an adjoining apartment complex. He was then brought to the blue van.

Officer Dorough intended to charge Foskey with obstruction and hindering the law, a misdemeanor offense. Foskey refused to communicate with officers, and a search of his person failed to produce keys to the van. Thus, the officers, while unsure, assumed Foskey was the older white man who had driven the van because he fit the description given by the Fresh Air employees. The officers decided to impound the van because the open windows left it unsecured. Investigator Jason Batchelor obtained entry to the van by reaching through the open driver's side window and unlocking the door. An inventory search of the van resulted in discovery of a semiautomatic handgun, ammunition, and camouflage clothing and face paint. Officers subsequently determined Foskey was a convicted felon.

On March 10, 2010, a federal grand jury indicted Foskey, charging him with one count of possession of a firearm by a convicted felon, in violation of 18

U.S.C. §§ 922(g)(1) and 924(e)(1). Foskey sought suppression of the firearm, arguing his initial stop, subsequent arrest, and the inventory search violated the Fourth Amendment.

The district court denied the motion to suppress. The court found the initial stop supported by reasonable suspicion and the arrest supported by probable cause. As for the inventory search, the district court found that, based on the testimony of Officer Dorough and Investigator Batchelor, Macon Police Department policy required an unsecured vehicle to be impounded if no one was available to take custody of the vehicle, even though the government failed to submit a written impound policy to the court. The district court found that the van was indeed unsecured because two windows were open wide enough to allow for the unlocking of the vehicle. The court then determined that Batchelor followed proper inventory procedure, and that the inventory search was not conducted as a pretext for an investigatory search. Foskey proceeded to trial. On August 17, 2010, a jury convicted Foskey of possessing a firearm as a convicted felon. The district court sentenced Foskey to 240 months' imprisonment.

II.

This Court reviews a denial of a suppression motion under a mixed standard. A district court's factual findings are reviewed for clear error while its application of the law is reviewed de novo. *United States v. Farley*, 607 F.3d 1294, 1325 (11th Cir. 2010). We must view the evidence in the light most favorable to the government. *United States v. Spoerke*, 568 F.3d 1236, 1244 (11th Cir. 2009). This Court is not restricted to the evidence presented at the suppression hearing, but instead considers the record as a whole. *United States v. Jordan*, 635 F.3d 1181, 1185 (11th Cir. 2011).

Foskey first argues that his stop and arrest violated the Fourth Amendment. The Fourth Amendment protects "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const. amend. IV. However, the Fourth Amendment does not apply equally to every law enforcement interaction with the public. This Court "ha[s] categorized encounters between police and citizens into three types, with varying levels of Fourth Amendment scrutiny: (1) police-citizen exchanges involving no coercion or detention; (2) brief seizures or investigatory detentions; and (3) full-scale arrests." *Jordan*, 635 F.3d at 1185. A voluntary encounter becomes an investigatory seizure when there is a submission to a show of police authority or

6

restraint by physical force sufficient to impede a person's freedom of movement. *Id.* at 1186.

*(1) Initial interaction – police-citizen exchange*

Officer Dorough's initial interactions with Foskey were consensual and voluntary. Officer Dorough questioned Foskey from within his patrol car and through an open window. He did not display his firearm, or physically touch Foskey. He did not exert force or show authority to restrain Foskey's freedom of movement. Although Officer Dorough may have had reasonable suspicion that Foskey was the older white man associated with the blue van, such suspicions do not change the voluntary nature of the encounter. *See United States v. Caraballo*, 595 F.3d 1214, 1222-23 (11th Cir. 2010). Thus, the initial questioning was not a *Terry* stop.

*(2) Reasonable suspicion entitling officer to issue order to stop flight*

To effectuate a *Terry* stop, a law enforcement officer must have "reasonable, articulable suspicion based on objective facts that the person has engaged in, or is about to engage in, criminal activity." *United States v. Lindsey*, 482 F.3d 1285, 1290 (11th Cir. 2007). Reasonable suspicion is "considerably less than proof of wrongdoing by a preponderance of the evidence" and less than probable cause, which is "a fair probability that contraband or evidence of a crime

7

will be found." *United States v. Sokolow*, 490 U.S. 1, 7 (1989) (quotation omitted). "[N]ervous, evasive behavior is a pertinent factor in determining reasonable suspicion." *Illinois v. Wardlow*, 528 U.S. 119, 124 (2000). Further, individual facts capable of innocent interpretation may give rise to reasonable suspicion when viewed as a whole. *United States v. Arvizu*, 534 U.S. 266, 274-75 (2002). A court must review the totality of the circumstances to determine whether an officer had a "particularized and objective basis" to suspect legal wrongdoing. *Id.* at 273.

Although the initial encounter was voluntary, Officer Dorough had suspicions prior to speaking with Foskey. Officer Dorough had receieved the initial complaint and conducted interviews of witnesses. Officer Dorough had seen for himself the strange manner in which the van was parked. Then, a Fresh Air employee frantically told him the suspicious van's driver had returned and was walking behind the shopping center. Upon driving behind the shopping center, Officer Dorough encountered Foskey, who fit the description of an older white male and was the only person he saw in the area.

During the voluntary encounter, Officer Dorough obtained additional information. Although Foskey was in a public place, he was walking through an area from which he could not access the stores in the shopping center. When

8

asked what he was doing behind the businesses, Foskey responded he was "just taking a walk." When Officer Dorough asked him about the van, Foskey "seemed . . . to [be] trying to disassociate himself with the van." Finally, when Officer Dorough asked Foskey for identification, Foskey fled.

It is important to stress that even if Foskey's flight was lawful, the flight can be considered in the calculus of whether reasonable suspicion existed to stop Foskey. *Wardlow*, 528 U.S. at 124-25; *United States v. Franklin*, 323 F.3d 1298, 1301-02 (11th Cir. 2003). These circumstances, viewed in their totality, support a particularized and objective basis to suspect Foskey of legal wrongdoing.

*(3) Warrantless arrest after order to stop*

However, a warrantless full-scale arrest must be supported by probable cause. *United States v. Lyons*, 403 F.3d 1248, 1253 (11th Cir. 2005). Probable cause exists when a police officer has a reasonable belief that a suspect committed or was committing a crime, based upon facts and circumstances within their knowledge. *United States v. Gonzalez*, 969 F.2d 999, 1002 (11th Cir. 1992). To determine whether probable cause supports an arrest, we must examine the state law a suspect allegedly violated. *Wood v. Kesler*, 323 F.3d 872, 878 (11th Cir. 2003). Here, Dorough arrested Foskey for obstructing and hindering a law enforcement officer's lawful discharge of his official duties, in violation of Ga.

9

Code Ann. § 16-10-24(a). In *Cofield v. State*, the Georgia Court of Appeals found that flight after a lawful command to halt constitutes obstruction of an officer. 304 Ga. App. 165, 168, 695 S.E.2d 696, 698 (2010). Cofield fled after witnessing the arrest of another suspect, and an officer ordered Cofield to stop. Although the officer initially lacked probable cause to arrest Cofield, the officer had reasonable suspicion to conduct an investigatory stop. Because Cofield ignored the officer's order to stop, he violated § 16-10-24(a). Thus, *Cofield* demonstrates that ignoring an officer's lawful command to halt issued for the purpose of conducting a *Terry* investigative stop can support a conviction for obstructing and hindering a law enforcement officer.

Because Officer Dorough possessed reasonable suspicion that Foskey had violated the law, he had legal authority to conduct a *Terry* stop, and Officer Dorough's order to stop was lawful. When Foskey ignored Officer Dorough's lawful order to stop and continued his flight, Officer Dorough then possessed probable cause to believe Foskey had violated § 16-10-24(a) by obstructing and hindering a law enforcement officer's lawful duties. Therefore, Foskey's apprehension and arrest did not violate the Fourth Amendment.

III.

Foskey argues in the alternative that the inventory search of his vehicle violated the Fourth Amendment. Foskey contends that the testimony of the two officers regarding police policy was inconsistent, and that the failure to submit a written impound policy prevents a finding that a standard policy existed at the time of the seizure.

The Supreme Court has recognized that pursuant to law enforcement's "community caretaking functions," automobiles are frequently impounded by law enforcement. *South Dakota v. Opperman*, 428 U.S. 364, 370 (1976). An impounded vehicle may be the subject of an inventory search. *Id.* at 369. When analyzing the reasonableness of an inventory search, a court must determine (1) whether the police had the authority to impound the vehicle, and (2) whether the officers followed procedures governing inventory searches. *United States v. Williams*, 936 F.2d 1243, 1248 (11th Cir. 1991). Foskey only challenges the legality of his vehicles' impoundment.

An officer may impound a vehicle because it jeopardizes public safety or impedes the efficient movement of vehicular traffic. *Opperman*, 428 U.S. at 369. Further, impoundments may occur while police officers attempt to determine whether a vehicle has been stolen. *See id.*; *Williams*, 936 F.2d at 1248-49.

11

Finally, even a lawfully parked car that presents no hazard to public safety may be impounded when the circumstances present an "appreciable risk of vandalism or theft." *United States v. Staller*, 616 F.2d 1284, 1290 (5th Cir. 1980)[1]; *see Opperman*, 428 U.S. at 369 ("The practice [of securing and inventorying the automobiles' contents] has been viewed as essential to respond to incidents of theft or vandalism."). The Supreme Court has found that standard criteria or established routine must govern inventory searches of impounded vehicles. *Florida v. Wells*, 495 U.S. 1, 4 (1990). Thus, a reasonable "policy or practice" must be shown by the government. *Id.*; *see also Sammons v. Taylor*, 967 F.2d 1533, 1543 (11th Cir. 1992); *Williams*, 936 F.2d at 1248. The reasonableness of the policy or practice "does not necessarily or invariably turn on the existence of alternative less intrusive means." *Colorado v. Bertine*, 479 U.S. 367, 374 (1987) (quotations omitted). Thus, "a law enforcement officer may impound [a] vehicle, so long as the decision to impound is made on the basis of standard criteria and on the basis of something other than suspicion of evidence of criminal activity." *Sammons*, 967 F.2d at 1543 (quotation omitted). However, a valid impound and

---

[1] In *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc), this Court adopted as binding precedent all decisions of the former Fifth Circuit handed down prior to close of business on September 30, 1981.

12

inventory search "is not vitiated by a police officer's suspicion that contraband or other evidence may be found." *Staller*, 616 F.2d at 1290.

Here, the district court found the following facts:

- Dorough and Batchelor were credible witnesses.
- The blue van's windows were partially open (the car had power windows).
- Foskey no longer possessed the keys to the van.
- The open windows made the van "not secure."
- Dorough and Batchelor understood the Macon Police Department's impound policy to require impounding an unsecurable vehicle.
- Both Dorough and Batchelor reasonably suspected Foskey to have driven the van to the lot.
- Dorough and Batchelor could not determine whether they could turn the van over to someone else because Foskey would not give them any information.
- The officers followed standard procedure by impounding the van.
- The search of the van also followed standard procedure.
- Dorough and Batchelor's purpose was not investigative in nature.

Foskey claims the officers testified inconsistently. Foskey asserts that Officer Dorough testified the vehicle was impounded for being unsecured, but listed on the inventory report that the reason for impoundment was "driver arrested." Further, Foskey argues Inspector Batchelor "gave a different version" of the impoundment policy by saying that impoundment was necessary to protect the property rights of the owner of the vehicle.

13

The two officers testified consistently. The impoundment of an unsecured car inherently protects the property rights of the car's owner by preventing its theft. As for Officer Dorough's entry on the form, Foskey's arrest was a "but for" cause of the vehicle's impoundment. Because Officer Dorough suspected Foskey to be the driver, the arrest prevented releasing the van to him. The district court's findings of fact are reviewed for clear error. "Where there are two permissible views of the evidence, the factfinder's choice between them cannot be clearly erroneous." *United States v. Saingerard*, 621 F.3d 1341, 1343 (11th Cir. 2010). Further, "[a]ppellate courts reviewing a cold record give particular deference to credibility determinations of a fact-finder who had the opportunity to see live testimony." *Owens v. Wainwright*, 698 F.2d 1111, 1113 (11th Cir. 1983). The district court found Officer Dorough and Inspector Batchelor's testimony to be truthful and, despite Officer Dorough's entry on the form, found that they impounded the vehicle because it was not properly secured. The district court's view of the evidence is supported by the record, and therefore not clearly erroneous.

Because the district court's findings of fact are not clearly erroneous, the failure to introduce a written impound policy does not demand suppression. The government must only demonstrate that an "established routine" or "practice"

14

exists authorizing impoundment. *See Wells*, 495 U.S. at 4. Therefore, the government need not show that a written policy, city ordinance, or state law supports the impoundment. *See United States v. Smith*, 522 F.3d 305, 315 (3d Cir. 2008); *United States v. Coccia*, 446 F.3d 233, 238-40 (1st Cir. 2006); *United States v. Duguay*, 93 F.3d 346, 351 (7th Cir. 1996). Because the district court did not clearly err in finding that impounding unsecured vehicles was an established routine and general practice of the Macon Police Department, and because that practice is reasonably related to the community safekeeping function, the motion to suppress was properly denied.

**AFFIRMED.**