[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 16-16214
Non-Argument Calendar
_____

D.C. Docket No. 1:15-cr-20907-KMW-1

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

versus

DWIGHT ERICKSON MOSS,

Defendant - Appellant.
_____

Appeal from the United States District Court
for the Southern District of Florida
_____

(September 11, 2018)

Before TJOFLAT, JORDAN, and NEWSOM, Circuit Judges.

PER CURIAM:

Dwight Moss appeals his conviction for possessing a firearm in furtherance

of a drug trafficking crime, in violation of 18 U.S.C. § 924(c)(1)(A), arguing that

the district court erred in denying his motion to suppress physical evidence obtained through a search of his vehicle. We hold that the search was a valid inventory search of an impounded vehicle, and affirm Mr. Moss' conviction.

## I

On August 6, 2015, at approximately two o'clock in the morning, Miami Gardens Police Department officers on patrol saw a 2002 silver Buick bearing temporary Florida paper license tag BLH9635 exit the parking lot of an Exxon gas station in Miami Gardens, Florida. The officers observed that neither Mr. Moss, who was driving the vehicle, nor the front seat passenger wore seatbelts. Additionally, a records check of the temporary tag revealed that the corresponding vehicle identification number ("VIN") contained 18 characters—not 17 characters as required for vehicles manufactured after 1981. *See* 49 C.F.R. § 565.13(b). The MGPD officers then pulled Mr. Moss' vehicle over.

During the traffic stop, Officer Jorge Casiano noticed a smell of alcohol coming from the vehicle and saw an open can of malt liquor in the rear passenger cup holder. Mr. Moss provided Officer Casiano with a temporary registration document, which matched the temporary license tag but also corresponded to the improper 18-digit VIN. When Officer Casiano input the registration information into a driver records database, it revealed three temporary tags registered to Mr. Moss. All three tags had been issued within 16 days of each other, corresponded to

2

a vehicle matching the description of the Buick, and corresponded to nearly the exact same VIN (except the last characters), only one VIN of which had 17 characters. Officer Casiano knew that Florida law limited a person to obtaining two successive, back-to-back temporary tags per vehicle, each valid for 30 days.

Based on this information, Office Casiano determined that Mr. Moss had provided him with a counterfeit registration document, and decided to arrest him. He asked Mr. Moss and the two passengers to exit the car, which they did. Officer Casiano then observed that the VIN on the Buick's dashboard contained 17 characters and did not match the 18-digit VIN corresponding to the temporary license tag and registration document.

Officer Casiano decided that, under the circumstances, he would have to tow and impound Mr. Moss' vehicle, because it would not be reasonable for someone to retrieve it. The database search had revealed that neither of the two passengers had a valid driver's license, and there was an outstanding warrant for one of them. And because the Buick did not have a validly registered tag in the first place, it would not have been legal for anyone to drive it. *See* Fla. Stat. § 320.0605.

MGPD policy requires that an inventory search be conducted of all towed or impounded vehicles. *See* post at 7 n.2. While Mr. Moss and the two passengers sat on the sidewalk, not handcuffed, Officer Casiano searched the Buick. He discovered nineteen baggies of powder cocaine, fourteen baggies of crack cocaine,

3

and four baggies of a narcotic known as BZP, all recovered from underneath the ash tray in the center console. The search also revealed a loaded .380 caliber firearm beneath the narcotics, as well as a digital scale and $701 in cash elsewhere in the vehicle. Officer Casiano searched Mr. Moss' person, and discovered five baggies of narcotics in Mr. Moss' sock. Officer Casiano subsequently placed Mr. Moss under arrest.

Following his arrest, Mr. Moss filed a motion before the district court to suppress the physical evidence discovered during the searches of the Buick and his person, as well as statements he made to Officer Casiano following his arrest. Mr. Moss argued that the warrantless searches violated the Fourth Amendment. In response, the government argued that the warrantless vehicle search was valid (1) as a lawful search incident to arrest; (2) under the automobile exception to the warrant requirement for searches; and (3) as an inventory search of an impounded vehicle. The government also argued that even if the search satisfied none of the three exceptions, the evidence was admissible under the inevitable discovery doctrine.

The district court agreed with the government on all four grounds and denied the motion to suppress. Upon review, we conclude that the search of Mr. Moss'

4

vehicle was a valid inventory search. Because we resolve the appeal on this ground, we do not reach the alternative theories relied on by the district court.[1]

## II

We review a district court's denial of a motion to suppress as a mixed question of law and fact, examining findings of fact for clear error and reviewing the application of law to those facts *de novo*. *See United States v. King*, 509 F.3d 1338, 1341 (11th Cir. 2007).

## III

Inventory searches are "a well-defined exception to the warrant requirement of the Fourth Amendment." *Colorado v. Bertine*, 479 U.S. 367, 371 (1987) (citing *South Dakota v. Opperman*, 428 U.S. 364, 367-76 (1976)). "[R]easonable police regulations relating to inventory procedures administered in good faith satisfy the Fourth Amendment." *Id.* at 374. "Nothing . . . prohibits the exercise of police discretion [regarding a decision to impound a vehicle] so long as that discretion is exercised according to standard criteria and on the basis of something other than suspicion of evidence of criminal activity." *Florida v. Wells*, 495 U.S. 1, 3-4 (1990) (quoting *Bertine*, 479 U.S. at 375). Here, Mr. Moss argues that Officer

---

[1] Mr. Moss initially challenged the constitutionality of the initial traffic stop and his arrest, as well as the admissibility of the statements he made to Officer Casiano. As part of the conditional plea agreement that Mr. Moss reached with the government, Mr. Moss does not appeal those issues, and only appeals the lawfulness of the search of his car.

Casiano's decision to impound his vehicle was not based on any standard criteria, and thus the subsequent search of his vehicle violated the Fourth Amendment.

Mr. Moss contends that the search of his vehicle violated the Fourth Amendment because the government did not provide a written MGPD towing or impoundment policy, emphasizing the requirement for standard criteria for inventory search procedures. "[A]bsent any [inventory search] policy whatsoever, a search cannot be 'sufficiently regulated to satisfy the Fourth Amendment.'" Appellant's Brief at 11 (quoting *Wells*, 495 U.S. at 5). "[E]xplicit and comprehensive procedures are necessary for inventory searches, because '[w]ithout such procedures, officers are left with no guidance in the performance of a duty which is meant not as an investigatory technique but as a means for safeguarding individuals' possessions and protecting the police from false claims.'" *Id*. at 11-12 (quoting *United States v. Williams*, 936 F.2d 1243, 1248 (11th Cir. 1991)). "If a search is to be upheld under the inventory search doctrine, therefore, the police must first have the authority to impound the vehicle and must then follow the procedures outlined in the policy." *Id*. at 12 (quoting *Williams*, 936 F.2d at 1248).

The problem for Mr. Moss is that the MGPD has just such a written policy with explicit procedures for conducting inventory searches of impounded vehicles. The MGPD provided comprehensive written procedures for how it conducts inventory searches of impounded vehicles, which is precisely what the Supreme

6

Court has required. *See Wells*, 495 U.S. at 4; *Bertine*, 479 U.S. at 374 n.4 ("Our decisions have always adhered to the requirement that inventories be conducted according to standardized criteria.").[2]

True, the MGPD does not have (or did not provide) a *written* policy for *impounding and towing* a vehicle. But "standard criteria [governing decisions to impound vehicles] need not be detailed criteria." *United States v. Johnson*, 777 F.3d 1270, 1277 (11th Cir. 2015). *See also Williams*, 936 F.2d at 1248-49 (upholding inventory search based on district court's indication that the policy of the police department permitted impoundment under the circumstances). And there is no requirement that the standard criteria be contained in a written policy. *See United States v. Betterton*, 417 F.3d 826, 830 (8th Cir. 2005); *United States v. Skillern*, 947 F.2d 1268, 1275 (5th Cir. 1991).

Mr. Moss essentially argues that, absent a *written* policy detailing when and how a police officer may *impound* a vehicle, no *search* of any such impounded

---

[2] "A vehicle may be searched in its entirety without a warrant under the following exceptions:

    A. Towed or Impounded Vehicle Inventory Searches – If a vehicle is impounded or towed, the vehicle and contents of all containers found within the vehicle, whether locked or unlocked, will be inventoried. All inventory searches shall be conducted in good faith and in accordance with the policies set forth by MGPD.

      1. The impounding officer shall conduct an itemized inventory of the vehicle for personal property and place all property of value in safekeeping.

      2. Any containers found in the vehicle shall be opened, and all contents of such containers shall be inventoried.

      3. A locked glove compartment, locked trunk or other locked compartment shall be opened and the contents inventoried if the impounding officer has possession of a key to these areas during the inventory."

GX 9 ("Miami Gardens Police Department Policy Manual – Search Procedures") at 4-5.

vehicle can be lawful, even if guided by a written, comprehensive inventory search policy, and even if the decision to impound the vehicle was eminently reasonable under the circumstances. Put differently, Mr. Moss would have us hold that, absent a written impoundment policy, any decision by a police officer to impound a vehicle (and subsequently to conduct a search of the vehicle) cannot be reasonable. But that is not the law, and Mr. Moss does not point to any support for his requested extension. The principle girding the requirement for standard criteria for inventory searches is that the searches "must not be a ruse for a general rummaging in order to discover incriminating evidence." *Wells*, 495 U.S. at 4. That principle was not violated here.

The MGPD officers' decision to impound Mr. Moss' vehicle was in no way unreasonable under the circumstances. It was two o'clock in the morning, and the car was parked on the side of a public road. The car lacked a valid tag and registration. Neither of the passengers had a valid driver's license, and there was an outstanding warrant for one of the passengers. Florida law prohibits operating a vehicle bearing a tag that is not registered to that vehicle, and thus it would not have been legal for *anyone* to drive the Buick home, not just the two passengers.

Thus, contrary to Mr. Moss' assertions, the testimony of his mother that she was available and able to drive the Buick home has no bearing or impact, because it would have been just as illegal for her to drive the Buick home as it would have

8

been for either of the license-less passengers. The testimony of Mr. Moss' mother does not undercut the reasonableness of the police decision to tow and impound Mr. Moss' vehicle. Under these conditions, it was eminently reasonable for the police to believe that public safety and prudence demanded that they not wait for somebody to come retrieve the car. "The reasonableness of any particular governmental activity does not necessarily or invariably turn on the existence of alternative 'less intrusive' means." *Bertine*, 479 U.S. at 374 (quoting *Illinois v. Lafayette*, 462 U.S. 640, 647 (1983)).

For these same reasons, we also reject Mr. Moss' argument that the decision to impound and tow the Buick was based on "suspicion of evidence of criminal activity." *Bertine*, 479 U.S. at 375. The record belies this assertion. Mr. Moss has provided no explanation as to why Officer Casiano's decision to tow the vehicle was unreasonable under the circumstances, nor any *legitimate* alternative suggestion as to how the police were supposed to remove the Buick from the side of a public road so that it would not pose a public safety hazard. Mr. Moss' personal assumptions that Officer Casiano was motivated by suspicions of criminal activity do not persuade us otherwise. Even so, "the mere expectation of uncovering evidence will not vitiate an otherwise valid inventory search." *United States v. Roberson*, 897 F.2d 1092, 1096 (11th Cir. 1990).

Here, the district court found Officer Casiano to be a credible witness, and found as a matter of fact that he had followed standard impounding criteria in deciding to impound and tow Mr. Moss' vehicle. We generally do not disturb a district court's credibility determinations. And the court's factual determination that Officer Casiano followed standard impounding criteria is not clearly erroneous under these circumstances.

## IV

The search of Mr. Moss' vehicle was a permissible inventory search of an impounded vehicle. The district court did not err in denying the motion to suppress, and we affirm Mr. Moss' conviction.

**AFFIRMED.**