[DO NOT PUBLISH]

In the

# United States Court of Appeals

### For the Eleventh Circuit

_____

No. 24-13035

Non-Argument Calendar

_____

UNITED STATES OF AMERICA,

Plaintiff-Appellee

*versus*

WILLIE FRANK GORDON,
a.k.a. Willie Frank Miles Gordon,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Northern District of Florida
D.C. Docket No. 3:22-cr-00043-MCR-HTC-1

_____

_____

No. 24-13062

Non-Argument Calendar

_____

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

*versus*

WILLIE FRANK GORDON,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Northern District of Florida
D.C. Docket No. 3:14-cr-00077-MCR-HTC

_____

Before ROSENBAUM, ABUDU, and WILSON, Circuit Judges.

PER CURIAM:

In this consolidated appeal, Defendant-Appellant Willie Gordon appeals his convictions for possession with the intent to

distribute methamphetamine and cocaine, possession of a firearm in furtherance of a drug-trafficking crime, and possession of a firearm as a convicted felon. He also challenges the district court's revocation of his supervised release and imposition of a 24-month sentence of imprisonment. Gordon contends that the Escambia County Sheriff's Office (ECSO) obtained evidence of the drugs and firearm during an invalid inventory search of the vehicle he was driving. Gordon also asserts that, if his convictions are vacated, the district court abused its discretion in revoking his supervised relief based on those convictions. Because, after careful review, we find the inventory search valid, we affirm.

## I.

On March 15, 2022, ECSO Deputy Hunter Owens, accompanied by several other officers, observed Gordon driving without a seatbelt and initiated a traffic stop in a shopping center parking lot. Once Gordon was pulled over, Owens requested Gordon's license, registration, and proof of insurance. Gordon gave Owens his identification card and replied that the car was not his but rather his friend Justin Whitney's. Owens instructed Gordon to exit the vehicle, and Gordon complied. Owens asked if Gordon had ever owned a valid driver's license in the state of Florida, and Gordon said that he had not. Owens then instructed another officer to detain Gordon, and Owens searched Gordon's person before escorting him to the back of a law enforcement vehicle. After Gordon was detained, several officers looked through the windows of the vehicle and discussed searching the vehicle. Owens noted that they

did not have a basis for searching the whole vehicle at that time and proceeded to search only the front driver's side of the vehicle.

After Gordon was detained, Deputy Kevin Kelly asked Gordon who owned the car, and Gordon replied that Whitney did. Kelly then asked Gordon for Whitney's phone number, explaining that he needed to determine what to do with the vehicle. Gordon provided Kody McGee's phone number. When Kelly spoke with McGee, he learned that McGee was not the owner. Kelly advised Gordon that McGee could not pick up the vehicle because he was not the owner, and Gordon told Kelly that Whitney, the owner, was in jail. The officers decided to impound the vehicle for safekeeping and inventory its contents because they were unable to reach the vehicle's owner since he was incarcerated, knew of frequent criminal activity in the shopping center, and would not release the car to a third party to prevent the ECSO from incurring liability.

Deputy Kelly requested a tow truck, and officers began searching all areas of the vehicle. During the search, Deputy Owens retrieved a black backpack from behind the driver's seat and discovered that it contained large quantities of drugs, a handgun, ammunition, and drug paraphernalia. After the tow truck operator arrived, officers prepared an incident report and a "Vehicle Impound and Inventory Receipt," which included information regarding the vehicle and its contents.

After Owens read Gordon his *Miranda*[1] rights and Gordon agreed to speak with him, Owens explained that Gordon was being arrested and the vehicle would be towed because they could not contact the registered owner. Owens questioned Gordon about the firearm and drugs, but Gordon denied ownership. The items were seized, and the vehicle was towed to a private storage lot.

A federal grand jury returned an indictment, charging Gordon with possessing fifty grams or more of methamphetamine and cocaine with the intent to distribute them, in violation of 21 U.S.C. § 841(a)(1), (b)(1)(A)(viii), and (b)(1)(C) (Count 1); possessing a firearm in furtherance of a drug-trafficking crime, in violation of 18 U.S.C. § 924(c)(1)(A)(i) (Count 2); and possessing a firearm as a convicted felon, in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2) (Count 3).

Prior to trial, Gordon filed a motion to suppress the drugs and firearm obtained during the search of the vehicle as well as the statements Gordon made to the officers. After a hearing, the district court denied Gordon's motion, finding that the inventory search was lawful. The court determined that the officers had the authority to impound the vehicle because there was a valid arrest, officers took reasonable efforts to provide an alternative to impoundment, and they were not required to pursue less intrusive alternatives under the circumstances. The district court also found

---

[1] *Miranda v. Arizona*, 384 U.S. 436 (1966).

that the inventory search complied with ECSO standardized criteria and established routine.

Gordon's case proceeded to a jury trial. The government introduced evidence of the drugs, firearm, and statements obtained in connection with the inventory search. Gordon objected to the introduction of the evidence, and the district court overruled his objection, but noted that it was preserved for the record. The jury convicted Gordon on all counts.

The district court sentenced Gordon to a total of 240 months' imprisonment followed by a 5-year term of supervised release for the substantive convictions. The district court also determined that Gordon had violated the conditions of his supervised release. The court sentenced Gordon to 2 years' imprisonment for violating his term of supervised release, to be served consecutively to the 240-month imprisonment sentence.

Gordon timely appealed his convictions for the federal drug and firearm offenses and the sentence imposed upon revocation of his supervised release. Gordon moved to stay the appeal of the revocation case, but this court denied his motion and consolidated his appeals.

## II.

We review a district court's ruling on a motion to suppress under a mixed standard, reviewing the district court's findings of fact for clear error and its application of the law to those facts de novo. *United States v. Bervaldi*, 226 F.3d 1256, 1262 (11th Cir. 2000). "[W]hen considering a ruling on a motion to suppress, all facts are

construed in the light most favorable to the prevailing party" before the district court. *Id.*

### III.

Generally, "searches conducted outside the judicial process, without prior approval by judge or magistrate, are *per se* unreasonable under the Fourth Amendment." *Arizona v. Gant*, 556 U.S. 332, 338 (2009) (quotation marks omitted). But there are a "few specifically established and well-delineated exceptions." *Id.* Among those exceptions, police may conduct an inventory search on a legally impounded vehicle. *South Dakota v. Opperman*, 428 U.S. 364, 372–73 (1976).

The inventory search of a vehicle is justified by the interests in protecting the owner's property while it remains in police custody and protecting the police against potential danger or claims related to stolen property. *Id.* at 369. However, an inventory search "must not be a ruse for a general rummaging in order to discover incriminating evidence," *Florida v. Wells*, 495 U.S. 1, 4 (1990), and its scope "may not exceed that necessary to accomplish the ends of the inventory," *United States v. Khoury*, 901 F.2d 948, 958 (11th Cir. 1990). But "the mere expectation of uncovering evidence will not vitiate an otherwise valid inventory search." *United States v. Roberson*, 897 F.2d 1092, 1096 (11th Cir. 1990) (quotation marks omitted).

When analyzing the reasonableness of an inventory search, a court must determine (1) whether the police had the authority to impound the vehicle, and (2) whether the officers followed

relevant procedures governing inventory searches. *United States v. Williams*, 936 F.2d 1243, 1248 (11th Cir. 1991).

Officers have discretion in deciding whether a car should be impounded but must exercise that discretion "according to standard criteria and on the basis of something other than suspicion of evidence of criminal activity." *Colorado v. Bertine*, 479 U.S. 367, 375 (1987). The reasonableness of an officer's decision to impound a vehicle does not necessarily turn on the existence of "less intrusive" alternatives to impoundment. *See id.* at 374 (quotation marks omitted). The "critical question . . . [is] whether the decision to impound and the method chosen for implementing that decision were, under all the circumstances, within the realm of reason." *Sammons v. Taylor*, 967 F.2d 1533, 1543 (11th Cir. 1992). For example, officers may reasonably exercise their discretion to impound a vehicle when it is lawfully parked but the area presents an "appreciable risk of vandalism or theft." *United States v. Staller*, 616 F.2d 1284, 1290 (5th Cir. 1980).[2]

After officers lawfully impound the vehicle, they "may conduct a warrantless inventory search of it if they continue to follow standardized criteria." *United States v. Isaac*, 987 F.3d 980, 989 (11th Cir. 2021) (internal quotation marks omitted). Officers need not conduct inventory searches in "a totally mechanical 'all or nothing' fashion." *Wells*, 495 U.S. at 4. An officer's failure to thoroughly

---

[2] All decisions rendered by the Fifth Circuit before the close of business on September 30, 1981, are binding precedent in the Eleventh Circuit. *Bonner v. City of Pritchard*, 661 F.2d 1206, 1207 (11th Cir. 1981) (en banc).

complete an inventory receipt will not necessarily invalidate an inventory search. *See United States v. O'Bryant*, 775 F.2d 1528, 1534 (11th Cir. 1985).

On appeal, Gordon first argues that the officers did not properly exercise their discretion in deciding to impound the vehicle Gordon was driving because they did not comply with ECSO policy. The policy contained two provisions potentially relevant to the situation. First, it authorized officers to "remove vehicles from public property when the person in control of the vehicle fails to do so" and "[r]emoval is necessary for public safety" or the driver "is taken into custody and reasonable efforts to provide alternatives to impound are unsuccessful." Second, where the vehicle's operator "is arrested and the vehicle is to be towed for safekeeping," the policy directs officers to record information related to the towed vehicle, prepare a "Vehicle Impound and Inventory Receipt," and contact a tow truck.

The record reflects that the officers complied with the policy's "standardized criteria" in deciding to impound the vehicle. *See Bertine*, 479 U.S. at 375. Specifically, the officers decided to impound the vehicle only after they validly arrested Gordon for driving without a license and attempted to contact Whitney, the vehicle's owner, to retrieve the vehicle. Their decision to impound for safekeeping was reasonable given that Gordon told officers that Whitney was incarcerated, meaning he would be unable to pick it up, and leaving the car in the parking lot in a high-crime area would

create an "appreciable risk" of damage to the vehicle. *See Staller*, 616 F.2d at 1290.

Still, Gordon contends that the officers failed to comply with their own policy requiring "reasonable efforts to provide alternatives to impound" by not allowing McGee to take the vehicle, declining to call Whitney in jail, and not permitting Gordon to make other arrangements for its removal. But officers are not required to pursue "less intrusive" alternatives when impoundment is authorized. *See Bertine*, 479 U.S. at 374. And, as explained above, the impoundment was authorized under the policy because the owner was incarcerated, thus unable to retrieve the vehicle, and officers reasonably determined that towing would be required to keep the vehicle safe. Considering ECSO's impound policy and "all the circumstances," the officers' decision to impound the vehicle was "within the realm of reason." *Sammons*, 967 F.2d at 1543. So, the district court did not err by determining that the officers were authorized to impound the vehicle. *See Williams*, 936 F.2d at 1248.

Next, Gordon argues that the officers impounded the car as pretext to search the vehicle. Gordon contends that the officers' purpose of searching the vehicle, to "catch him with guns and drugs," was evidenced by the facts that several officers arrived at the scene and they completed the inventory receipt in a perfunctory manner, violated the ECSO's policy by conducting the search without the tow truck operator present, delayed in calling the tow truck, and exhausted other options to search the vehicle before impounding it. Contrary to Gordon's assertions, the officers complied

with the ECSO's procedures by calling a towing company, completing an inventory receipt, and preparing an incident report during their inventory search. Additionally, to the extent that Gordon argues that the inventory receipt was deficient, the ECSO's policy states that officers must list the contents of the inventory, which they did, but does not require a certain level of specificity. And any purported minor deficiencies in the receipt did not render the inventory search invalid because the officers otherwise complied with the relevant policies. *See O'Bryant*, 775 F.2d at 1534. Finally, any expectation the officers had of finding evidence in the vehicle did not "vitiate" their inventory search because it was otherwise valid. *Roberson*, 897 F.2d at 1096.

The district court reasonably determined that the officers had the authority to impound the vehicle and followed the relevant procedures governing inventory searches. *See Williams*, 936 F.2d at 1248. Thus, it did not err by denying Gordon's motion to suppress the drugs and firearm that the officers obtained by searching the vehicle and the statements made by Gordon after the search. We, therefore, affirm Gordon's convictions.

Because we affirm the convictions and the only claim Gordon raises in his appeal of the revocation of his supervised release is that the district court erred by imposing a 24-month imprisonment sentence if the instant federal convictions are vacated, we also affirm Gordon's imprisonment sentence imposed upon revocation of his supervised release.

**AFFIRMED.**