**UNITED STATES of America,**
**Plaintiff–Appellee,**

v.

**Franklin MANOR, Joseph Williams, Michael Butler, Defendants–Appellants.**

**No. 90–8247.**

United States Court of Appeals,
Eleventh Circuit.

July 30, 1991.

Andrew J. Ryan, III, Savannah, Ga., for Williams.

William M. Simon, Simon & Booth, Savannah, Ga., for Butler.

Joseph D. Newman, Asst. U.S. Atty., Savannah, Ga., for plaintiff-appellee.

Before KRAVITCH and COX, Circuit Judges, and RONEY, Senior Circuit Judge.

RONEY, Senior Circuit Judge:

The appellants, Franklin Manor, Joseph Williams, and Michael Butler, named along with twenty-seven other individuals in a 59–count indictment, were convicted of several drug related offenses.[1] The Government maintained that the thirty individuals made up an enormous cocaine distribution organization operating in Savannah, Georgia, from approximately March of 1984 through September of 1989. The organization was allegedly headed by an individual named Byron Thompson who obtained large amounts of cocaine from suppliers in Miami and then distributed the drugs through his network in Savannah. After an extensive and prolonged investigation, the Government brought charges against the members of this organization and severed the case into three separate groups of defendants. *See United States v. Thompson*, 936 F.2d 1249 (11th Cir.1991); *United States v. Williams*, 936 F.2d 1243 (11th Cir.1991). The appellants in this case were all tried jointly.

Each defendant raised both common and individual issues on appeal. We affirm all the convictions, addressing three issues on appeal and affirming the remaining issues without opinion under our Eleventh Circuit Rule 36–1.

### Miranda Warnings and Targets of Criminal Investigations

Defendant Joseph Williams maintains that statements he made to an agent involved in the investigation of the Thompson organization were taken without the appropriate *Miranda* warnings and should, therefore, have been suppressed. *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

On March 10, 1989, Detective Steven Giella was driving through the streets of Savannah when he noticed a vehicle which he recognized as one which was used by the Byron Thompson organization. Upon closer examination he noticed defendant Williams cleaning the wheels of the vehicle. Apparently, Detective Giella had some past contacts with Williams and he pulled in to speak with him. During the course of the conversation Williams indicated a desire to discuss his involvement in the distribution ring. Williams gave Giella his pager number and asked him to call him later in the day to arrange a meeting.

The two eventually set up a meeting at a location selected by defendant Williams. Upon arriving at the designated location, Detective Giella got out of his car and joined Williams in his vehicle. The two men exchanged greetings and Detective Giella informed Williams that he did not have to say anything and that if Williams wanted to have his attorney present while they talked he could do so. Detective Giella acknowledged that the warnings he gave would not have been sufficient if he had placed Williams under arrest and he admitted that his warnings did not comply with the *Miranda* standards. The detective stated, however, that Williams was not under arrest and therefore he felt full *Miranda* warnings were unnecessary.

During the conversation itself, Williams admitted obtaining up to 18 ounces of cocaine from Byron Thompson. He also named between seven and nine individuals who were involved with the Thompson organization and described exactly what their roles were within the distribution system.

---

1. Defendant Manor was acquitted of conspiracy under Count 1, but was convicted of distribution of cocaine under Counts 18 and 19, in violation of 18 U.S.C. § 2 and 21 U.S.C. § 841(a)(1).

Defendant Williams was convicted of conspiracy to distribute cocaine under Count 1. 21 U.S.C. § 846.

Defendant Butler was convicted of conspiracy to distribute cocaine in Count 1, in violation of 21 U.S.C. § 846, and aiding and abetting in the distribution of cocaine base (crack) in Counts 15 and 21, in violation of 18 U.S.C. § 2 and 21 U.S.C. § 841(a)(1).

At trial, counsel for Williams objected to the admission of these statements on the ground that Williams was considered a target of the investigation by law enforcement officials at the time the conversation took place, and that, as a result, Detective Giella should have fully advised him of his rights under *Miranda* before obtaining a statement. The district court overruled counsel's objection.

■ The district court correctly held that the protections of *Miranda* apply only to custodial interrogation which the Supreme Court defined as "questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way." *Miranda,* 384 U.S. at 444, 86 S.Ct. at 1612. In this case, the defendant himself requested the meeting with the officer. The defendant selected the location of the meeting and the conversation itself took place in the defendant's car. This setting clearly did not create the type of coercive pressures which the warnings of *Miranda* were meant to dispel. *See, e.g., Oregon v. Mathiason,* 429 U.S. 492, 97 S.Ct. 711, 50 L.Ed.2d 714 (1977) (defendant that came to police station voluntarily, though at request of police officer, was not subjected to custodial interrogation); *Berkemer v. McCarty,* 468 U.S. 420, 104 S.Ct. 3138, 82 L.Ed.2d 317 (1984) (roadside questioning pursuant to traffic stop does not constitute custodial interrogation). The detective in this case was not required to offer defendant even the limited warning that he did provide. As a result, rather than having his rights violated, defendant was afforded warnings beyond those to which he was entitled.

The fact that Williams may have been a target of either the grand jury or of a police investigation is irrelevant. The Supreme Court has clearly stated that *Miranda* is not implicated simply because an individual is the subject or target of an investigation. *Minnesota v. Murphy,* 465 U.S. 420, 431, 104 S.Ct. 1136, 1144, 79 L.Ed.2d 409 (1984).

### Defense Counsel's Right to Take Statements from Prosecution Witnesses

■ Defendant Butler's assertion of reversible error in connection with the use on cross-examination of a transcript of an interview between counsel and witness Anthony Jackson is meritless. The court was clearly correct in concluding the transcript was not a deposition within the meaning of Fed.R.Crim.P. 15, which governs the use of depositions in criminal cases.[2] Counsel met virtually none of the rule's prerequisites for taking the deposition of a prospective witness. He failed to seek leave of court, he did not demonstrate any exceptional circumstances, he did not suggest that there was any need to preserve the witness' testimony due to potential unavailability, and he failed to notify opposing counsel. The interview was unilateral. No rule in criminal or civil practice permits such a procedure to be termed a deposition so that it can be introduced in evidence. Any argument

---

2. **Fed.R.Crim.P. 15. Depositions**

(a) **When Taken.** Whenever due to exceptional circumstances of the case it is in the interest of justice that the testimony of a prospective witness of a party be taken and preserved for use at trial, the court may upon motion of such party and notice to the parties order that testimony of such witness be taken by deposition....

(b) **Notice of Taking.** The party at whose instance a deposition is to be taken shall give to every party reasonable written notice of the time and place for taking the deposition. The notice shall state the name and address of each person to be examined....

　·　　·　　·　　·　　·

(e) **Use.** At the trial or upon any hearing, a part or all of a deposition, so far as otherwise admissible under the rules of evidence, may be used as substantive evidence if the witness is unavailable, as unavailability is defined in Rule 804(a) of the Federal Rules of Evidence, or the witness gives testimony at the trial or hearing inconsistent with that witness' deposition. Any deposition may also be used by any party for the purpose of contradicting or impeaching the testimony of the deponent as a witness. If only a part of a deposition is offered in evidence by a party, an adverse party may require the offering of all of it which is relevant to the part offered and any party may offer other parts.

that the transcript should be used in the same manner as a Rule 15 deposition is frivolous.

■ If a defendant wishes to speak with a Government witness prior to trial he is free to do so providing the Government witness agrees to the meeting. *United States v. Troutman,* 814 F.2d 1428, 1453 (10th Cir.1987). Any statements the witness makes which are inconsistent with those made at trial may properly be used for purposes of impeachment. The record shows that, contrary to Butler's assertions, counsel was allowed to use this evidence to impeach the witness.

■ On the Government's objection, the court ruled that counsel could not refer to the statement as being under oath as a prior sworn statement. Whether the court was right or wrong on this ruling need not be determined here. The record contains this question and answer of Witness Jackson before the jury:

Q. Do you remember—you were under oath when I talked to you; were you not?

A. Yes—

Q. In fact—

Mr. Newman (Government Counsel): Your Honor, can I approach the bench with counsel sidebar?

Thereafter in the sidebar conference, out of the hearing of the jury, the court sustained the Government's objection to "the preference of his prior interview with the witness by saying he was under oath." No ruling was announced to the jury, nor was the jury instructed to ignore the witness' response. With the affirmative answer to the question of whether the witness was under oath unchallenged before the jury, defense counsel continued to question the witness about his answers at that interview. No further proffers or requests were made of the court. On this record, any error, if error at all, would be clearly harmless.

### Sentencing Based on a Charge on Which Defendant Has Been Acquitted

■ Defendant Manor contends that the district court erred in calculating his base offense level by using an amount of cocaine involved in a charge on which he had been acquitted. Although Manor was convicted on two distribution counts involving approximately 19 grams of cocaine, he was acquitted on the conspiracy charge. The conspiracy charge was based on an alleged transaction involving approximately 250 grams of cocaine in June or July of 1989. The district court added that 250 grams of cocaine to the 19 grams for which he was convicted to raise Manor's base offense level from 12 to 20.

The only evidence associating defendant with the conspiracy is the testimony of a single witness. The defendant maintains that the jury obviously found this testimony unreliable when it decided to acquit defendant on the conspiracy charge. The jury, however, may well have acquitted the defendant not because it did not believe that the transaction took place, but because it felt that the sale was not associated with the conspiracy. As a result, on this record, it would be inappropriate to conclude that the jury, by finding Manor innocent on the conspiracy charge, conclusively determined that Manor never received the drugs in question. The district court witnessed the entire trial and may have concluded that the testimony was sufficient to establish a link between the defendant and this larger quantity of drugs.

■ Even if we were to conclude that the jury's verdict did establish that the prosecution failed to demonstrate the defendant's involvement in this transaction beyond a reasonable doubt, the district court would still have been justified in taking this information into account. Under the guidelines, the district court is permitted to aggregate all drug quantities involved in the same course of conduct, even if certain amounts are not specified in the count of conviction. United States Sentencing Commission, *Guidelines Manual,* § 1B1.3, comment (backg'd) (Nov. 1990). In making this determination, the sentencing court need only apply a preponderance of the evidence standard to the facts presented. *United States v. Alston,* 895 F.2d 1362, 1373 (11th Cir.1990). Therefore,

an acquittal based on a reasonable doubt standard should not preclude a contrary finding using the preponderance of the evidence. In *United States v. Funt*, 896 F.2d 1288 (11th Cir.1990), this Circuit made this point clear in a non-guidelines case by stating, "Furthermore, an acquittal does not bar a sentencing court from considering the acquitted count in imposing sentence." *Id.* at 1300. Since oral argument, another panel of this Court has concluded that the holding in *Funt* is applicable in guidelines as well as non-guidelines cases. *United States v. Rivera–Lopez*, 928 F.2d 372 (11th Cir.1991). Several other circuits are in accord. *See United States v. Rodriguez–Gonzalez*, 899 F.2d 177, 179–82 (2nd Cir.), *cert. denied*, —— U.S. ——, 111 S.Ct. 127, 112 L.Ed.2d 95 (1990); *United States v. Mocciola*, 891 F.2d 13, 17 (1st Cir.1989); *United States v. Isom*, 886 F.2d 736, 738–39 (4th Cir.1989); *United States v. Juarez–Ortega*, 866 F.2d 747, 749 (5th Cir.1989); *United States v. Ryan*, 866 F.2d 604, 609 (3rd Cir.1989). *But see United States v. Brady*, 928 F.2d 844 (9th Cir.1991).

The district court's finding is not clearly erroneous. *See United States v. Wilson*, 884 F.2d 1355, 1357 (11th Cir.1989).

AFFIRMED.