**UNITED STATES of America, Plaintiff–Appellee,**

v.

**Byron Lester THOMPSON, Defendant–Appellant.**

No. 90–8343.

United States Court of Appeals, Eleventh Circuit.

July 30, 1991.

W. Gaston Fairey, Columbia, S.C., for defendant-appellant.

Joseph D. Newman, Asst. U.S. Atty., Savannah, Ga., for plaintiff-appellee.

Before KRAVITCH and COX, Circuit Judges, and RONEY, Senior Circuit Judge.

RONEY, Senior Circuit Judge:

 We hold that information obtained from a pen register placed on a telephone can be used as evidence in a criminal trial

even if the court order authorizing its installation does not comply with the statutory requirements. The Supreme Court has held that the installation of a pen register does not constitute a search under the Fourth Amendment of the Constitution and does not warrant invocation of the exclusionary rule. *Smith v. Maryland,* 442 U.S. 735, 99 S.Ct. 2577, 61 L.Ed.2d 220 (1979). The statute providing for pen registers also does not require the exclusion of evidence obtained in violation of its provisions. 18 U.S.C. § 3121 *et seq.* We, therefore, affirm the criminal convictions on this appeal against an allegation that a motion to suppress the evidence was improperly denied.

Defendant Byron Lester Thompson was indicted along with 29 other individuals on various drug related and money laundering charges. *See United States v. Manor,* 936 F.2d 1238 (11th Cir.1991), and *United States v. Williams,* 936 F.2d 1243 (11th Cir.1991). As part of its investigation, the Government made extensive use of both Title III wiretaps under 18 U.S.C. § 2511 *et seq.,* and pen registers to monitor the contacts made between the various coconspirators. According to the affidavits presented to the Magistrate Judge and ultimately the evidence adduced at the trial of Thompson's co-defendants, defendant Thompson and his organization relied heavily on cellular phones and pagers to receive orders from buyers and coordinate deliveries and pickups.

In his motion to suppress the information gained through the pen register involved here, Thompson alleged that, absent the information from one of the pen registers installed by the Government, the affidavit supporting a Title III wiretap application would not have provided sufficient probable cause to warrant the interception. As a result, the information obtained through the wiretap would also have been excluded. The district court denied defendant's motion. Defendant then agreed to plead guilty, admitting involvement in a continuing criminal enterprise and a money laundering conspiracy, but reserving the right to contest the district court's ruling on his motion to suppress.

An attorney for the Government may obtain a court order authorizing the installation and use of a pen register by making an application which identifies the attorney making the application and the law enforcement agency conducting the investigation. The applicant must certify under oath or affirmation that "the information likely to be obtained is relevant to an ongoing criminal investigation." 18 U.S.C. § 3122(b)(2).

In this case, the application listed Assistant United States Attorney Joseph D. Newman as the applicant. The signature at the bottom, however, was that of another Assistant United States Attorney, Kathy Aldridge, "for Joseph D. Newman." Defendant contends that this method of making application fails to meet the statutory requirements in that no attorney for the Government has certified that the information sought is relevant to the investigation. The individual that actually signed the application did not swear under oath that the information would be relevant to the inquest and the individual listed as the official applicant was not bound by the signature of his co-worker.

The magistrate judge who examined this application indicated that this was a common practice in his court when the attorney assigned to the case was unable to appear at the hearing. He also stated that although he could not remember the specific circumstances of this application, it was his practice to require that the signing attorney have knowledge of the case and certify to the court that the application met the statutory prerequisites. The district court concluded, therefore, that Ms. Aldridge met the statutory definition of an "applicant" due to her apparent pledge concerning the relevance of the information sought.

In the absence of an explicit recollection by the magistrate judge or testimony from the signing attorney about any assurances she made to the court, we have serious reservations about the accuracy of this holding. For purposes of this decision, we

assume, without deciding, that this practice represents a technical violation of the Act.[1]

In 1979, the Supreme Court held that the use of a pen register does not constitute a search for purposes of Fourth Amendment analysis, concluding that a device which merely records the numbers dialed from a particular telephone line does not represent a sufficient invasion of privacy to warrant Fourth Amendment protection. *Smith v. Maryland,* 442 U.S. 735, 99 S.Ct. 2577, 61 L.Ed.2d 220 (1979). Thus the judicially created exclusionary rule traditionally applied to evidence obtained by illegal search does not apply.

The defendant maintains, however, that we should exclude this evidence, not because his constitutional rights have been violated, but because the Government has failed to comply with an act of Congress. The Supreme Court has never squarely addressed this issue. In *United States v. Caceres,* 440 U.S. 741, 99 S.Ct. 1465, 59 L.Ed.2d 733 (1979), an IRS agent had recorded a conversation with a taxpayer without receiving prior authorization in violation of an internal agency regulation. In holding that evidence obtained in contravention of internal agency policies need not be excluded or suppressed, the Court suggested there was neither a constitutional nor statutory violation. 440 U.S. at 749, 99 S.Ct. at 1470; 440 U.S. at 755 n. 21, 99 S.Ct. at 1473 n. 21. This language, however, clearly was dicta and was not necessary to the Court's holding. Although *Miller v. United States,* 357 U.S. 301, 78 S.Ct. 1190, 2 L.Ed.2d 1332 (1957), cited in *Caceres,* held that a violation of a statute justified exclusion of the evidence, the search, without statutory authorization of the Government's conduct, resulted in an a violation of the Fourth Amendment.

■ Due to the Supreme court's holding in *Smith,* however, a violation of the statute regulating pen registers, does not result in an unconstitutional search. The defendant, in fact, does not argue that there has been an unconstitutional search or a due process violation. He argues simply that a statutory violation should result in exclusion of the pen register evidence.

Counsel for the defendant has not pointed to any cases holding that a statutory violation alone, absent any underlying constitutional violation, warrants imposition of the exclusionary rule, nor has our independent research uncovered any cases so holding. On the contrary, several cases indicate that statutory violations by themselves are insufficient to justify the exclusion of any evidence obtained in that manner. *See United States v. Kington,* 801 F.2d 733, 737 (5th Cir.1986) (violation of statute will not result in suppression unless statute itself specifies exclusion as remedy), *cert. denied,* 481 U.S. 1014, 107 S.Ct. 1888, 95 L.Ed.2d 495 (1987); *United States v. Michaelian,* 803 F.2d 1042, 1049 (9th Cir.1986) (violation of 26 U.S.C. § 6103 does not require suppression); *United States v. Frazin,* 780 F.2d 1461, 1465–66 (9th Cir.) (violation of Right to Financial Privacy Act does not warrant exclusion), *cert. denied,* 479 U.S. 839, 107 S.Ct. 142, 93 L.Ed.2d 84 (1986); *cf. Pennsylvania Steel Foundry & Mach. v. Secretary of Labor,* 831 F.2d 1211, 1219 (3rd Cir.1987) (noting that some courts have determined that exclusionary rule is not appropriate for statutory violations); *United States v. Comstock,* 805 F.2d 1194, 1207–08 (5th Cir.1986) (holding that non-compliance with Rule 41 does not warrant exclusion and citing language from numerous opinions stating that only *constitutional* violations justify suppression), *cert. denied,* 481 U.S. 1022, 107 S.Ct. 1908, 95 L.Ed.2d 513 (1987). *Cf. United States v. Sainsbury–Suarez,* 797 F.2d 931, 933 (11th Cir.1986) (violations of international law do not require exclusion).

■ Therefore, following this precedent, the defendant would have to show that Congress had provided such a remedy for a violation of the statute, either specifically or by inference. Clearly Congress intended to place limits on the Government's ability to monitor the private activities of individuals when it passed this statute. Con-

---

**1.** We are informed that this practice in the Southern District of Georgia has been discontin-

ued.

gress did not, however, suggest that any information obtained in violation of the statute's provisions should be excluded. Instead the statute provides only for fines and possible imprisonment for knowing violations. 18 U.S.C. § 3121(c). When Congress specifically designates a remedy for one of its acts, courts generally presume that it engaged in the necessary balancing of interests in determining what the appropriate penalty should be. *See Michaelian,* 803 F.2d at 1049 (citing cases); *Frazin,* 780 F.2d at 1466. Absent a specific reference to an exclusionary rule, it is not appropriate for the courts to read such a provision into the act.

It is noteworthy that Congress passed this statute after the Supreme Court's holding in *Smith v. Maryland* that the Constitution does not require the suppression of evidence seized through the use of pen registers, and made no provision for exclusion. *See Kington,* 801 F.2d at 737. On the other hand, when Congress authorized the use of wiretaps, it specifically provided for an exclusionary remedy when the statutory requirements are not met. 18 U.S.C. §§ 2515, 2518(10)(a).

Defendant argues that this holding leaves defendants without a remedy for a violation of a congressional enactment. The same reasons that led the Supreme Court to deny the Fourth Amendment exclusionary rule to pen register evidence are equally applicable in justifying the congressional action in providing an exclusionary remedy in wiretap cases, but not in pen register cases. Implementation of a judicially imposed exclusionary remedy for a violation of these congressionally mandated procedures would be out of proportion to the infraction. *See INS v. Lopez-Mendoza,* 468 U.S. 1032, 1041–42, 104 S.Ct. 3479, 3484–85, 82 L.Ed.2d 778 (1984) (court must weigh costs and benefits when deciding whether to apply exclusionary rule). Absent either a constitutional or statutory

basis for excluding the evidence obtained through this procedure, the district court correctly denied the defendant's motion to suppress.[2]

AFFIRMED.

---

**2.** Due to our resolution of this issue, we need not address the Government's alternative argument concerning a good faith exception to the pen register statute, *see United States v. Malekzadeh,* 855 F.2d 1492, 1497 (11th Cir.1988), *cert. denied,* 489 U.S. 1029, 109 S.Ct. 1163, 103

L.Ed.2d 221 (1989) (applying *Leon's* good faith exception to wiretaps), or its contention that the Title III wiretap was supported by probable cause even if the information obtained through the pen register was excluded.