[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 11-11059
Non-Argument Calendar
_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
JANUARY 12, 2012
JOHN LEY
CLERK

D.C. Docket No. 1:10-cr-00075-JRH-WLB-1

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

REGINALD LONNEL CRAY,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Southern District of Georgia
_____

(January 12, 2012)

Before TJOFLAT, PRYOR and KRAVITCH, Circuit Judges.

PER CURIAM:

Reginald Lonnel Cray appeals his convictions for receipt of child pornography, in violation of 18 U.S.C. § 2252A(a)(2), and possession of child pornography, in violation of 18 U.S.C. § 2252A(a)(5)(B).[1]  On appeal, Cray presents several arguments for the reversal of his convictions.  Before addressing his arguments, we set out, in the light most favorable to the verdicts, salient facts the evidence established.[2]

The Government's case was put together by agents of the Department of Homeland Security, Immigration and Customs Enforcement, the FBI, and the Georgia Bureau of Investigation.  Using various investigative techniques, including undercover access to a particular subscription-based child pornography website ("Website"), the agents obtained detailed information about the Website's

---

[1]  Cray was convicted on a superceding indictment.  The district court dismissed the first indictment without prejudice on speedy trial grounds.

[2]  We do this because Cray challenges the sufficiency of the evidence to convict. We review the sufficiency of the evidence *de novo*.  *United States v. Frazier*, 605 F.3d 1271, 1278 (11th Cir. 2010).  In making this determination, we consider "the evidence in the light most favorable to the Government, with all reasonable inferences and credibility choices made in the Government's favor."  *Id.* (citation omitted).  The evidence need not be inconsistent with every reasonable hypothesis except that of guilt, provided a reasonable trier of fact could find that the evidence established the defendant's guilt beyond a reasonable doubt.  *United States v. Merrill*, 513 F.3d 1293, 1299 (11th Cir. 2008).  Credibility questions are answered by the jury, and we will assume that the jury answered them all in a manner that supports the verdict. *United States v. Thompson*, 473 F.3d 1137, 1142 (11th Cir. 2006).

2

subscribers and associated e-mail accounts.[3]

On March 25, 2008, Cray, using the name Reginald Cray, a First National Bank South ("FNB") credit card, a post office box address in Fort Gordon, Georgia,[4] an email address gqfats06@yahoo.com, and a telephone number, purchased a 30-day subscription to the Website for $79.99.[5] After Cray subscribed, BellSouth.net.Inc., his internet service provider, assigned a specific Internet Protocol ("IP") address, 68.217.244.87, to his residence. The next day, March 26, at 1:42 a.m., Cray, using that IP address, accessed the Website and viewed several child pornographic movies. Shortly thereafter, BellSouth changed the IP assigned to the residence to 74.203.181.25. On March 27, 2009, Cray used an IP address controlled by Comcast Communications, 67.162.248.119, to access the Website from Dover, Delaware. He viewed 14 movies and three pages of child pornography on that occasion.[6] Using his 74.203.181.25 IP address, Cray

[3] The agents executed a search warrant on the Website's computer server which housed the child pornography, *e.g.,* images, videos, and movies. The search uncovered the weblogs maintained by the Website that detailed the activities of the subscribers: when they logged in, what they viewed and the Internet Protocol address they used to access the server.

[4] Cray, an officer in the Army reserves, was on active duty at Fort Gordon. The post office box address and the telephone number belonged to him.

[5] FNB sent a bank statement containing the credit card $79.99 charge to the post office box. Cray chose the user name "gqfats06" in accessing the Website's server.

[6] Cray had gone to Washington, D.C. to attend a job fair held from March 26 to March 31. His FNB bank statement showed two ATM withdrawals in Dover, Delaware, on March 28.

also accessed the Website on April 1, 11, 13, 14 , 2008, and viewed countless pieces of child pornography—movies, videos, and images.

On April 28, 2008, agents met with Cray at his residence and executed a search warrant. While they were there, he consented to an interview. He admitted to the agents that, using his Dell laptop, he had accessed the Website, knowing that it contained child pornography, and viewed the contents of its server. He was aware that the contents involved real children, not "midgets or morphed images." He said that he had viewed child pornography over the Website for about four years, but was careful not to download or save the images to his computer. A forensic evaluation of Cray's laptop revealed that Cray had viewed at least 19 videos.

With this brief recitation of Cray's use of his subscription to the Website, we turn to the arguments Cray presents.

## I.

Cray argues that the district court erred in denying his motion for judgment of acquittal, contending that the evidence was insufficient to convict.[7] The evidence was insufficient, he submits, because no actual images of child

---

[7] Cray also contends that the district court abused its discretion in denying his motion for new trial. The contention is frivolous, thus warranting no discussion.

pornography were found on his computer. We review *de novo* the denial of a motion for judgment of acquittal on sufficiency-of-evidence grounds. *United States v. Friske*, 640 F.3d 1288, 1290 (11th Cir. 2011).

Pursuant to § 2252A(a)(2) of Title 18 of the U.S. Code, it is illegal for any person to (1) knowingly receive or distribute (2) any child pornography or material containing child pornography (3) that has been mailed or transported in or affecting interstate commerce by any means, including by computer. 18 U.S.C. § 2252A(a)(2). Pursuant to § 2252A(a)(5)(B), it is illegal for any person to (1) knowingly possess or access with intent to view (2) any material that contains an image of child pornography (3) that has been transported in or affecting interstate commerce by any means, including by computer. 18 U.S.C. § 2252A(a)(5)(B).

In *United States v. Pruitt*, 638 F.3d 763, 765 (11th Cir. 2011), the defendant sought out and viewed child pornography online, and child pornography images appeared in the cache and unallocated space of his computer. We noted that unallocated space contains deleted data that cannot be seen or accessed by the user without forensic software, is written over to store new information, and even if retrieved, all that can be known about the file, other than its content, is that it once existed on the computer's hard drive. *Id.* at 765 n.2. We stated that evidence that

5

a person sought out child pornography over the internet, and has a computer containing child-pornography images, even in the unallocated space or cache, "can count as circumstantial evidence that a person has knowingly received child pornography." *Id.* at 766 (quotations and brackets omitted). We noted that the jury had no obligation to credit Pruitt's expert, who testified that a virus was responsible for the images found in the cache and unallocated space, and held that a reasonable jury could have concluded beyond a reasonable doubt that Pruitt had knowingly received child pornography. *Id.* at 767.

As a preliminary matter, Cray does not dispute that the materials he and other subscribers viewed on the Website met the definition of child pornography, or that they were transported through interstate or foreign commerce. Accordingly, he has abandoned any claims in this respect. *See United States v. Jernigan*, 341 F.3d 1273, 1283 n.8 (11th Cir. 2003) (stating that issues not raised on appeal will be considered abandoned).

Because the jury reasonably could find beyond a reasonable doubt that Cray accessed the Website with intent to view child pornography, in violation of § 2252A(a)(2) and (a)(5)(B), the district court did not err in denying his motion for judgment of acquittal.

II.

Cray argues that the district court erred in dismissing his first indictment without prejudice for a violation of the Speedy Trial Act, 18 U.S.C. §§ 3161-3174, because there should be a presumption in favor of dismissal with prejudice for violations of the Act, and because the factors set forth in the Act required dismissal with prejudice.

We review a district court's decision to dismiss an indictment with or without prejudice for a violation of the Speedy Trial Act for abuse of discretion. *United States v. Brown*, 183 F.3d 1306, 1309 (11th Cir. 1999). There is no preference for dismissal with or without prejudice. *Id.* at 1310; *see United States v. Taylor*, 487 U.S. 326, 335, 108 S.Ct. 2413, 2418, 101 L.Ed.2d 297 (1988) (stating that the Speedy Trial Act left the decision to dismiss with or without prejudice to the discretion of district courts). The district court, however, must consider three factors in making its decision: (1) the seriousness of the offense; (2) the facts and circumstances of the case leading to the dismissal; and (3) the impact of a reprosecution on the administration of justice and the Speedy Trial Act. *Brown*, 183 F.3d at 1310 (quoting 18 U.S.C. § 3162(a)(1) and (2)).

Under the first factor, where the offense is serious, the district court should dismiss with prejudice only for a correspondingly severe delay. *United States v. Russo*, 741 F.2d 1264, 1267 (11th Cir. 1984). We have held that a severe delay of

7

68 days was not, by itself, sufficient to require dismissal of an indictment with prejudice. *United States v. Williams*, 314 F.3d 552, 560 (11th Cir. 2002). We also have recognized the seriousness of offenses involving the possession of child pornography. *See United States v. Pugh*, 515 F.3d 1179, 1198-99 (11th Cir. 2008) (recognizing, in the sentencing context, that receiving or possessing child pornography is a serious crime).

Under the second factor, if the delay is attributable to the Government's negligence or inadvertence, dismissal with prejudice is not automatically required "[w]here the violation of the Act is slight and the other two factors militate in favor of reprosecution." *Russo*, 741 F.2d at 1267. We have expressed a preference for dismissal without prejudice where the delay is the result of administrative confusion by the district court. *United States v. Miranda*, 835 F.2d 830, 834 (11th Cir. 1988).

Under the third factor, there is almost always some tension between the administration of justice and administration of the Act because the defendant can argue that dismissal without prejudice renders the Act effectively meaningless, while the Government can argue that the public interest requires that offenders be brought to justice. *Williams*, 314 F.3d at 559-60. This factor also allows courts to consider aggravating and mitigating factors, such as the length of the delay and

8

prejudice to the defendant. *Id.* at 560.

As an initial matter, there is no preference for one type of dismissal with or without prejudice under the Speedy Trial Act, and, thus, Cray's argument that we should adopt a presumption in favor of dismissal with prejudice is without merit. Because the first two factors militate in favor of dismissal without prejudice while the third factor is neutral, and because the delay resulted in part from the district court's administrative confusion, the court did not abuse its discretion in dismissing Cray's first indictment without prejudice.

### III.

Cray argues that he is entitled to suppression of evidence discovered during the search of his residence because the affidavit for the search warrant was based on his IP subscriber information and bank records that the Government obtained improperly through the use of administrative summonses, pursuant to 19 U.S.C. § 1509. He argues, moreover, that the use of the summonses violated the Right to Financial Privacy Act ("RFPA"), 12 U.S.C. §§ 3401-3417, and the Electronic Communications Privacy Act ("ECPA"), 18 U.S.C. §§ 1510-1522, and that those violations entitle him to suppression of evidence.

Our review of a district court's denial of a motion to suppress is a mixed question of law and fact. *United States v. Delancy*, 502 F.3d 1297, 1304 (11th Cir.

2007). We review a district court's findings of fact for clear error, construing the evidence in the light most favorable to the party that prevailed in the district court. We review a district court's interpretation and application of the law *de novo*. *Id.* A statutory violation by itself, without an underlying constitutional violation, is insufficient to justify the exclusion of evidence obtained in violation of the statute in question, unless the defendant shows that Congress provided such a remedy for a violation of the statute. *United States v. Thompson*, 936 F.2d 1249, 1251 (11th Cir. 1991) (collecting numerous extra-circuit decisions).

The ECPA provides that the Government may require an electronic communication service to disclose a record or other information pertaining to a subscriber or customer under certain, limited circumstances, including when the government obtains (1) a warrant, (2) a court order, (3) consent of the subscriber, or (4) an administrative subpoena. 18 U.S.C. § 2703(c). The ECPA authorizes an aggrieved party to file a civil action for a knowing or intentional violation of the statute by a person or entity other than the United States. 18 U.S.C. § 2707(a). The Act prescribes relief in the form of preliminary equitable or declaratory relief, damages, and reasonable attorney's fees and litigation costs. *Id.* § 2707(b). The ECPA further provides that the remedies and sanctions it provides are the only judicial remedies and sanctions for nonconstitutional violations of the Act.

10

18 U.S.C. § 2708.

In interpreting the Wiretap Act, 18 U.S.C. §§ 2510-2522, which Title I of the ECPA amended to address the interception of electronic communications, we held that, "while the Wiretap Act clearly provides criminal and civil sanctions for the unlawful interception of electronic communications, the Act provides no basis for moving to suppress such communications." *United States v. Steiger*, 318 F.3d 1039, 1046 (11th Cir. 2003) (citation omitted). We stated that "[d]espite the fact that the ECPA amended numerous sections of the Wiretap Act to include 'electronic communications,' the ECPA did not amend § 2515," which authorized suppression of evidence as a remedy solely for the illegal interception of wire and oral communications, but not for electronic communications. *Id.* at 1050. We concluded that the Wiretap Act did not provide a statutory suppression remedy for unlawfully acquired electronic communications because "the legislative history makes clear that a statutory suppression remedy does not exist for unlawful interceptions of 'electronic communications.'" *Id.* at 1051.

We have not addressed whether the RFPA provides a statutory suppression remedy. The RFPA prescribes remedies for violations of the Act in the form of a $100 fine, actual damages sustained by the customer, punitive damages, and costs and attorney's fees. 12 U.S.C. § 3417(a). The remedies and sanctions described

11

in the RFPA are exclusive. *Id.* § 3417(d).

In order for evidence to be suppressed based on a violation of the Fourth Amendment, a claimant bears the burden of proving that the search was unlawful and that he had a legitimate expectation of privacy. *United States v. McKennon*, 814 F.2d 1539, 1542 (11th Cir. 1987). To establish a reasonable expectation of privacy in the object of a challenged search, the claimant must show (1) that he manifested "a subjective expectation of privacy," and (2) a willingness by society "to recognize that expectation as legitimate." *Id.* at 1543. If the claimant establishes an expectation of privacy, then the burden shifts to the government to show that the search was reasonable under a recognized exception to the warrant requirement. *United States v. Harris*, 526 F.3d 1334, 1338 (11th Cir. 2008).

The Supreme Court consistently has held that there is no legitimate expectation of privacy in information a person voluntarily reveals to third parties. *United States v. Miller*, 425 U.S. 435, 442-43, 96 S.Ct. 1619, 1624, 48 L.Ed.2d 71 (1976). Specifically, the Court has held that there is no reasonable expectation of privacy in bank records, including financial statements, because the records only contained information the customer voluntarily conveyed to the bank and its employees in the ordinary course of business. *Id.* at 442, 96 S.Ct. at 1624. We have not addressed in a published opinion whether a defendant has a reasonable

12

expectation of privacy in subscriber information provided to an internet service provider.

The exclusionary rule is a judicially created remedy designed to safeguard Fourth Amendment rights through its deterrent effect, and requires that evidence obtained through an illegal search may not be used by the government in a subsequent criminal prosecution. *United States v. Martin*, 297 F.3d 1308, 1312 (11th Cir. 2002). The Supreme Court created a good-faith exception to this rule, stating that courts should generally not hold inadmissible evidence obtained by officers acting in reasonable reliance upon a search warrant later found to be unsupported by probable cause. *United States v. Leon*, 468 U.S. 897, 922, 104 S.Ct. 3405, 3420, 82 L.Ed.2d 677 (1984). Because the purpose of the exclusionary rule is to deter unlawful police misconduct, the *Leon* good-faith exception will apply when officers engaged in "objectively reasonable law enforcement activity" and acted in good faith when they obtained the search warrant. *Martin*, 297 F.3d at 1313.

The *Leon* good-faith exception applies in all but four sets of circumstances. Those circumstances are: (1) where the judge issuing the warrant was misled by information in an affidavit that the affiant knew was false or would have known was false except for his reckless disregard of the truth; (2) where the issuing judge

13

has "wholly abandoned" the neutral judicial role such that no reasonably well trained officer would rely on the warrant; (3) where the warrant is so lacking in indicia of probable cause that official belief in its validity is entirely unreasonable; and (4) where the warrant is facially deficient. *Leon*, 468 U.S. at 923, 104 S.Ct. at 3421.

Regardless of whether the federal agents violated the ECPA or RFPA through their use of administrative summonses, both statutes exclusively authorize civil remedies for violations and do not provide suppression remedies. Thus, Cray must show that the Government's use of his subscriber information and bank records violated the Fourth Amendment to warrant suppression of evidence. Even assuming that Cray had a protected privacy interest in his subscriber information and bank records, the good-faith exception to the exclusionary rule applies because he does not argue, and nothing in the record indicates, that any of the recognized exceptions to the good-faith rule applies.

IV.

Cray argues that the district court erred in permitting the Government's expert to testify that, in his opinion, Cray personally operated his laptop to access a child pornography website while in Dover, Delaware because the opinion was outside the scope of his expertise, was unreliable, and could have been made by

14

the Government during closing argument.

We review a district court's decision regarding the admissibility of expert testimony and the reliability of an expert opinion for abuse of discretion. *United States v. Frazier*, 387 F.3d 1244, 1258 (11th Cir. 2004) (*en banc*). In doing so, we will affirm unless we find that the district court applied the wrong legal standard or made a clear error of judgment. *Id.* at 1259.

> Rule 702 of the Federal Rules of Evidence provides that:
>
> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:
>
> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
>
> (b) the testimony is based on sufficient facts or data;
>
> (c) the testimony is the product of reliable principles and methods; and
>
> (d) the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702 (2011). The Supreme Court has provided a non-exclusive list of factors for district courts to consider in determining the reliability of scientific expert opinions. *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 593-94, 113 S.Ct. 2786, 2796-97, 125 L.Ed.2d 469 (1993). These factors include:

15

(1) whether the expert's theory can be and has been tested; (2) whether the theory has been subjected to peer review and publication; (3) the known or potential rate of error of the particular scientific technique; and (4) whether the technique is generally accepted in the scientific community. *Id.* This same criteria applies to assess the reliability of non-scientific, experience-based testimony. *Frazier*, 387 F.3d at 1262. These factors are general guidelines and are illustrative, not exhaustive, and not every factor will apply in every case. Expert testimony will assist the trier of fact if it concerns matters that are beyond the understanding of the average lay person. *Id.*

The Government expert's opinion that Cray accessed the child pornography website from his laptop while in Dover, Delaware was not outside the scope of the expert's expertise, was not unreliable, and would be helpful to a jury. Accordingly, the district court did not abuse its discretion in admitting the expert's testimony.

V.

Cray argues that the district court erred in allowing the Government's expert to testify to inadmissible hearsay data relating to the geographic location of IP addresses. Cray argues that the hearsay identification of the geolocation of IP addresses based on internet databases or searches is not

16

reasonably relied on by computer experts, and that, to the extent the district court weighed the testimony under Federal Rule of Evidence 703, the admission of this testimony was clear error. Cray also argues that the expert's reliance on hearsay instead of producing a witness to testify as to the IP address geolocation information violated the Confrontation Clause.

We review a district court's evidentiary rulings for abuse of discretion. *United States v. Perez-Oliveros*, 479 F.3d 779, 783 (11th Cir. 2007). We review *de novo* whether hearsay statements are "testimonial" for purposes of the Confrontation Clause. *United States v. Caraballo*, 595 F.3d 1214, 1226 (11th Cir. 2010). A hearsay objection is insufficient to preserve a Confrontation Clause claim on appeal. *United States v. Chau*, 426 F.3d 1318, 1321-22 (11th Cir. 2005).

We review evidentiary rulings that are not specifically objected to at trial, as is the case here, for plain error only. *United States v. Williford*, 764 F.2d 1493, 1502 (11th Cir. 1985). To establish plain error, a defendant must show that there is "(1) error, (2) that is plain, and (3) that affects substantial rights. If all three conditions are met, an appellate court may then exercise its discretion to notice a forfeited error, but only if (4) the error seriously affects the fairness, integrity, or public reputation of judicial proceedings." *United States v. Swatzie*, 228 F.3d 1278, 1281 (11th Cir. 2000) (ellipses and brackets omitted). "An error is plain if it

17

is obvious and clear under current law." *United States v. Eckhardt*, 466 F.3d 938, 948 (11th Cir. 2006). "An error that affects substantial rights is one that affected the outcome of the district court proceedings." *United States v. Henderson*, 409 F.3d 1293, 1308 (11th Cir. 2005) (internal quotations omitted).

Federal Rule of Evidence 703 allows experts to rely upon testimony which itself would not have been admissible if experts in the particular field would reasonably rely on those kinds of facts or data in forming an opinion on the subject. Fed. R. Evid. 703 (2011). Rule 703 requires a balancing inquiry, however, stating that "if the facts or data would otherwise be inadmissible, the proponent of the opinion may disclose them to the jury only if their probative value in helping the jury evaluate the opinion substantially outweighs their prejudicial effect." *Id.*

The Sixth Amendment provides that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him . . . ." U.S. Const. amend. VI. For purposes of both the Confrontation Clause and the Federal Rules of Evidence, hearsay statements are defined as oral or written assertions, or nonverbal conduct of a person if it is intended to be an assertion. *See United States v. Lamons*, 532 F.3d 1251, 1263 (11th Cir. 2008) (citing Federal Rule of Evidence 801(a) in analyzing a Confrontation Clause

issue). Where the statements in question are made by machines and not by humans, they are exempt from the purview of the Confrontation Clause. *Id.* at 1264. The Confrontation Clause bars the admission of hearsay evidence that is "testimonial" unless the witness is unavailable and the defendant had a prior opportunity for cross-examination. *Crawford v. Washington*, 541 U.S. 36, 68, 124 S.Ct. 1354, 1374, 158 L.Ed.2d 177 (2004). "Testimonial" statements are typically "solemn declaration[s] or affirmation[s] made for the purpose of establishing or proving some fact," and may include "material such as affidavits, custodial examinations, prior testimony that the defendant was unable to cross-examine, or similar pretrial statements that declarants would reasonably expect to be used prosecutorially." *Id.* at 51, 124 S.Ct. at 1364.

In *Davis*, the Supreme Court stated that statements are nontestimonial when made in the course of a police interrogation under circumstances that objectively indicate that the primary purpose of the interrogation is to enable police to respond to an ongoing emergency. *Davis v. Washington*, 547 U.S. 813, 126 S.Ct. 2266, 165 L.Ed.2d 224 (2006). Alternatively, statements are testimonial when there is no ongoing emergency and the statement is made under circumstances objectively indicating that the primary purpose of the interrogation is to prove past events that are potentially relevant to future criminal prosecution. *Id.* at 822, 126 S.Ct.

19

at 2273-74. Accordingly, the Court held that a victim's statements in response to a 911 operator's questions were not testimonial hearsay, the admission of which would violate the Confrontation Clause, because the primary purpose of the questioning was to enable police assistance in response to an ongoing emergency. *Id.* at 828, 126 S.Ct. at 2277.

The Court, in *Melendez-Diaz v. Massachusetts*, 557 U.S. __, 129 S.Ct. 2527, 174 L.Ed.2d 314 (2009), recently revisited the issue of what constitutes a testimonial statement. There, the defendant objected to the admission of three laboratory "certificates of analysis" showing that seized substances contained cocaine. *Id.* at __, 129 S.Ct. at 2531. The certificates were admitted in court as *prima facie* evidence of the composition, quality, and net weight of the substance at issue in the prosecution, pursuant to state law. *Id.* The Court held that these certificates, which it described as "quite plainly affidavits," were testimonial statements because they were made under oath for the purpose of establishing some fact, and under circumstances where an objective witness could reasonably believe that "the statement would be available for use at a later trial." *Id.* at ___, 129 S.Ct. at 2531-32. Thus, the Court held that, absent a prior opportunity to cross-examine the analysts, the defendant was entitled to confront them at trial. *Id.* at ___, 129 S.Ct. at 2532.

Under plain-error review, Cray does not cite any authority indicating that an expert's reliance on an online database or internet search to determine the geolocation of IP addresses was unreasonable. Thus, any error in admitting the expert's testimony would not be plain. Similarly, even assuming that the district court erred in conducting the balancing test required by Rule 703, Cray does not cite any binding authority establishing that a district court abuses its discretion by admitting expert testimony relating to the geolocation of IP addresses based on searches of the type relied on here. Thus, any such error would not be plain. With regard to Cray's Confrontation Clause argument, assuming that the search results qualify as "statements," Cray cites no authority indicating that such statements are "testimonial" for *Crawford* purposes; thus, any such error would not be plain. Accordingly, each of Cray's arguments fails at the second prong of the plain-error analysis.

VI.

Relying on *Old Chief v. United States*, 519 U.S. 172, 117 S.Ct. 644, 136 L.Ed.2d 574 (1997), Cray argues that the district court erred in allowing the publication of videos taken from the child pornography website's server to the jury because he did not actually possess those videos.

As we did with respect to the district court's other evidentiary rulings, we

21

review this ruling for abuse of discretion.  We reverse the defendant's conviction only if the purportedly erroneous ruling affected the defendant's substantial rights. *United States v. Dodds*, 347 F.3d 893, 897 (11th Cir. 2003).  Federal Rule of Evidence 401 provides that: "Evidence is relevant if: (a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action."  Fed. R. Evid. 401 (2011).  Relevant evidence is admissible unless the Constitution, a federal statute, the Federal Rules of Evidence, or other rules prescribed by the Supreme Court provide otherwise.  Fed. R. Evid. 402 (2011).  Federal Rule of Evidence 403 provides that: "The court may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence."  Fed. R. Evid. 403 (2011).  However, we have cautioned that Rule 403

> is an extraordinary remedy which the district court should invoke sparingly, and the balance should be struck in favor of admissibility. We have also said that in reviewing issues under Rule 403, we look at the evidence in a light most favorable to its admission, maximizing its probative value and minimizing its undue prejudicial impact.

 *United States v. Alfaro-Moncada*, 607 F.3d 720, 734 (11th Cir. 2010) (citation and quotations omitted), *cert. denied*, 131 S.Ct. 1604 (2011).

In *Dodds*, we affirmed the admission and publication of 66 images of child pornography out of 3,400 such images found in the defendant's possession. *Dodds*, 347 F.3d at 899. We first noted that the admitted images were not "extrinsic to the crime charged," but rather were a part of the thousands of images of child pornography which Dodds was convicted of possessing. *Id.* at 898. We held that the images were probative because, *inter alia*, they tended to show that Dodds knew the images were child pornography, they showed that the images were child pornography, and they inferred Dodds's intent to collect that pornography. *Id.* at 899. We also noted that "only a very small proportion of images found in the defendant's possession were shown to the jury," and that the district court had taken precautions to prevent unfair prejudice by excusing potential jurors during *voir dire* who indicated that they would be unable to render a fair verdict. Under these circumstances, we held that it was not an abuse of discretion for the district court to admit the images. *Id.*

More recently, in *Alfaro-Moncada*, we addressed the defendant's contention that, because he had stipulated that the DVDs at issue contained child pornography, the district court erred by admitting five still images contained on the DVDs. *Alfaro-Moncada*, 607 F.3d at 734. We held that admission of the images served the valid purpose of proving that the DVDs actually contained child

pornography, even though the defendant had so stipulated.  We also stated that the images tended to show that the defendant "knew he was in possession of child pornography, a fact that he did not stipulate."  In determining that any possible prejudice did not outweigh the probative value, we noted that "the jury was only shown a small number of the images on the DVDs–only 5 out of 4,650."  *Id.*

In *Old Chief*, the Supreme Court held that, with regard to the specific problem raised by 18 U.S.C. § 922(g)(1) and its prior-conviction element, charges encompassing a prior conviction created a risk of unfair prejudice to the defendant if evidence of the name or nature of the prior offense was admitted at trial. *Old Chief*, 519 U.S. at 185, 117 S.Ct. at 652.  As a solution to this problem, the Court held that the government must accept a defendant's stipulation to the fact of a prior conviction, rather than introducing such prejudicial evidence.  *Id.* at 191, 117 S.Ct. at 655-56.  The Court noted that this is the general rule when a defendant's felony-convict status is at issue, but that the prosecutor's choice will generally survive a Rule 403 inquiry when "a defendant seeks to force the substitution of an admission for evidence creating a coherent narrative of his thoughts and actions in perpetrating the offense for which he is being tried."  *Id.* at 191-92, 117 S.Ct. at 655-56.

As an initial matter, Cray's reliance on *Old Chief* is unavailing, as

24

felony-convict status was not at issue, nor does Cray argue that his stipulation that the videos constituted child pornography rendered their admission cumulative or overly prejudicial. The videos shown to the jury were relevant because they tended to infer Cray's intent to receive and access with intent to view child pornography, and proved that the videos available on the Website were actually child pornography. Moreover, the images were not extrinsic to the crime, as they were the images Cray allegedly received or accessed with intent to view. In light of *Dodds* and *Alfaro-Moncada*, the admission and publication of the videos was not so prejudicial as to warrant the extraordinary remedy of ruling them inadmissible under Rule 403. Accordingly, the district court did not abuse its discretion in admitting the videos and allowing the government to show samples of the videos to the jury.

## VII.

Cray argues that the district court abused its discretion in failing to give his requested jury instruction that out-of-court statements must be corroborated.

We review a district court's refusal to give a proposed jury instruction for abuse of discretion. *United States v. Chirinos*, 112 F.3d 1089, 1101 (11th Cir. 1997). A district court is not required to give a requested instruction if it would not assist the jury in resolving an issue. In determining whether the district court

25

abused its discretion, we consider three factors: (1) whether the instruction is a substantially correct statement of the law; (2) whether the jury instruction given addressed the substance of the requested instruction; and (3) whether the defendant's ability to present an effective defense was seriously impaired by the court's failure to give the requested instruction. *Id.* A district court need not grant a requested instruction that would tend to confuse the jury. *United States v. Silverman*, 745 F.2d 1386, 1399 (11th Cir. 1984).

In *United States v. Ryan*, 289 F.3d 1339, 1345 (11th Cir. 2002), the defendant requested an instruction that was a substantially correct statement of the law of entrapment, and the Government did not argue that the charge the court gave the jury addressed the substance of the requested instruction. The district court had permitted Ryan to argue his entrapment defense to the jury, allowed him to cross-examine witnesses on the issue, and in its charge to the jury, provided the jury opportunities to consider the defense. In light of the opportunities for the jury to consider Ryan's entrapment defense, we held that the district court's failure to include specific instructions on the issue did not seriously impair Ryan's presentation of the defense, and, thus, the district court did not abuse its discretion. *Id.*

The Supreme Court has held in a case decided prior to *Miranda v. Arizona*,

26

384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), that an accused may not be convicted based solely on his own uncorroborated confession. *Smith v. United States*, 348 U.S. 147, 152, 75 S.Ct. 194, 197, 99 L.Ed. 192 (1954). We have not addressed the issue of whether the jury must be instructed that an out-of-court confession must be corroborated.

As an initial matter, according to Cray's requested instruction, proof beyond a reasonable doubt that the alleged crime was committed "may, but does not necessarily constitute supporting evidence of a defendant's statement." Given the likelihood that this instruction would confuse the jury as to the proof required to convict, the district court did not abuse its discretion in denying Cray's requested instruction. Assuming that the instruction was not confusing and was a substantially correct statement of law, the court's jury charge was sufficient to allow Cray to challenge his alleged out-of-court confession to federal agents, and, thus, did not impair his defense. Accordingly, the district court did not abuse its discretion in refusing to instruct the jury as Cray requested.

VIII.

Cray argues that the district court erred in allowing the Government's summary chart—which matched filenames found in his laptop registry with files accessed on the Website by a subscriber using Cray's name and information—to

27

go to the jury. Cray relies on *United States v. Malol*, 476 F.3d 1283 (11th Cir. 2007), in arguing that a district court's abuse of discretion in allowing the jury to use a summary chart during deliberations warrants reversal in a close case.

We review a district court's ruling regarding the use of summary charts for an abuse of discretion. *United States v. Richardson*, 233 F.3d 1285, 1293 (11th Cir. 2000). Under Federal Rule of Evidence 1006, "[t]he proponent may use a summary, chart, or calculation to prove the content of voluminous writings, recordings, or photographs that cannot be conveniently examined in court." Fed. R. Evid. 1006 (2011). We have noted that summary charts are to be used with caution, and that the district court must make it clear to the jury that the ultimate decision of what weight to give the evidence lies with the jury. *Richardson*, 233 F.3d at 1293-94. Where the defendant has the opportunity to cross-examine a witness regarding a disputed issue and to present his own version of the case, the likelihood of any error in admitting a summary chart is diminished. *Id.* at 1294. We have affirmed the use of a summary chart where the Government complied with Rule 1006, the defendant had an opportunity to cross-examine the Government's witnesses about the chart, the defendant used the chart during the trial and was not prejudiced, and the district court gave a cautionary instruction to the jury regarding the use of the chart. *United States v. Hill*, 643 F.3d 807, 843

28

(11th Cir. 2011).  We presume that juries follow the district court's instructions. *Id.*

In *Malol*, the defendant appealed the admission of a summary chart compiling data from the defendant's files regarding losses suffered by hundreds of the defendant's customers.  *Malol*, 476 F.3d at 1290.  Because the evidence against the defendant was overwhelming and the chart merely repeated the same type of evidence that already had been presented, we concluded that, even if the district court erred in admitting the chart, that error was harmless and did not warrant reversal.  *Id.* at 1291-92.

As an initial matter, Cray's reliance on *Malol* is misplaced, as he misstates the holding of that case.  The information summarized on the chart was established by the Government's expert's testimony prior to the court's admission of the chart, the chart summarized approximately 160 pages of voluminous and technical computer data, Cray had ample opportunity to cross-examine the expert regarding the chart and its contents, and the district court gave cautionary instructions to the jury regarding the use of the chart.  Accordingly, the district court did not abuse its discretion in admitting that evidence.

AFFIRMED.